532 So.2d 917 (1988)
ENTERPRISE TRANSPORTATION COMPANY and Ranger Insurance Company
v.
Donald L. VEALS, et al.
Nos. 88-CA-230, 88-CA-228 and 88-CA-229.
Court of Appeal of Louisiana, Fifth Circuit.
October 12, 1988.
*918 Lawrence J. Ernst, Christovich & Kearney, New Orleans, for Enterprise Transp. Co. and Ranger Ins. Com., plaintiffs-appellants.
John J. Weigel, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, for Supreme Sugar Co., Inc., defendants-appellees.
Ronald E. Lampard, Armando R. Baralt, Hand and Lampard, Metairie, for Donald L. Veals, plaintiff-appellant.
Before CHEHARDY, BOWES and DUFRESNE, JJ.
BOWES, Judge.
On appeal is a summary judgment granted by the district court in favor of one of the defendants, Supreme Sugar Company, Inc. (hereinafter Supreme Sugar), dismissing it as a party defendant from the consolidated lawsuits. We affirm.
On June 15, 1983, Donald Veals (hereinafter Veals), an employee of MSB Manufacturing Company (hereinafter MSB) drove a tractor-trailer owned by MSB to the Supreme Sugar plant in Supreme, La., to pick up a load of liquid sugar. When Mr. Veals arrived at the plant, Supreme Sugar sanitized the tank and loaded the sugar. On his return trip to Reserve, La., a vehicular accident occurred between Veals and Jerry Guillory, Sr. (hereinafter Guillory), who was operating a tractor-trailer owned by his employer, Enterprise Transportation Company (hereinafter Enterprise). Both drivers were seriously injured.
Guillory filed suit against Veals and Gulf South Beverages (hereinafter Gulf South) (whom Guillory mistakenly believed to be Veals' employer). Veals subsequently sued Guillory, Enterprise and its insurer Ranger Insurance Company (hereinafter Ranger) and numerous other defendants, including Supreme Sugar. Enterprise and Ranger sued Veals, MSB, and most of the other defendants originally named in Veals' suit, including, again, Supreme Sugar. In Veals' suit, it was alleged as follows:
Further, petitioner avers that an additional legal cause of the accident was the sole, joint or concurrent negligence or fault of Gulf South Beverages, Inc., Pepsi Cola Bottling Company, Godchaux-Henderson Sugar Co., Inc., Great South West Sugar, Hunt International Resources, Supreme Sugar Company, Inc., and/or Coastal Canning, Inc., in the following nonexclusive particulars:
a) Failing to adequately inspect the brakes and/or other equipment on the tractor and trailer operated by petitioner;
b) Failing to maintain the brakes and/or equipment on said vehicle(s);
c) Failing to repair the brakes and/or other equipment on the vehicles(s);
d) Failing to implement a routine maintenance schedule to insure the adequate upkeep of the brakes and/or other equipment on the vehicles(s);
*919 e) Failing to make the necessary repairs to the brake system on both the tractor and trailer after having received notice of the defective nature and condition of said brakes;
f) Permitting a vehicle to operate on the highways with defective brakes and/or other equipment.
Enterprise and Ranger made virtually identical allegations against the defendants in its suit. Finally, Veals, MSB, Gulf South, and Employers Insurance of Wausau (their insurer) also filed cross claims against Supreme Sugar and several of the remaining defendants utilizing the same allegations of negligence.
All matters were consolidated for trial. After extensive discovery, Enterprise and Ranger filed a motion for summary judgment against Veals, which the trial court granted; Veals filed an exception of no cause of action as to a portion of Enterprise's action, which the trial court maintained. In an opinion dated April 13, 1987, this court affirmed the judgment on the exception, but reversed the summary judgment, remanding the case for trial. See Guillory v. Gulf South Beverages, Inc., 506 So.2d 181 (La.App. 5 Cir.1987).
Subsequently, Supreme Sugar filed a motion for summary judgment seeking dismissal from the proceedings on the basis that it did not own, operate or maintain the vehicle in which Veals was injured, had no responsibility for inspection or maintenance thereof, and was not the employer of either Veals or Guillory. The court granted the motion and dismissed Supreme Sugar from the suit, on the basis that it found no duty on the part of Supreme Sugar other than to load the trailer with liquid sugar, and that the tractor-trailer had not been sent to Supreme Sugar for a safety inspection or for repair. Enterprise, Ranger, and Veals have appealed from that judgment.
On appeal, Veals urges that appellee was in "possession" of the unit for certain time periods and as "custodian" of the unit on the day of the accident, had a duty to inspect and repair a dangerous existing condition, i.e., the allegedly defective brakes. Enterprise and Ranger aver that Veals was under the influence of drugs at the time of the accident, that his behavior was so outrageous and substandard that it would or should have been apparent to the employees of Supreme Sugar that he was so affected and therefore unfit to operate his vehicle on the highway. In brief, Enterprise urges:
"Certainly if those people charged with the placement of Supreme Sugar Company's products in the stream of commerce became aware that Veals was under the influence of a drug or was acting strangely then they would have a duty under the Jones case and other cases cited therein to take reasonable precaution to see that Veals would not be permitted to go onto the highway with its product. That action could have taken the form of a notification of the State Highway Patrol of the intoxicated behavior or unusual behavior of Mr. Veals or a refusal to load his vehicle or even possibly a call to his employer to advise them of his state and to inquire as to what action they wished taken."
The position of Enterprise seems to be based chiefly on the fact that the police accident report in the record notes that Veals was charged with possession of (less than one ounce of) marijuana. Further, appellants point to the fact that Veals was operating his vehicle with a windshield and mirrors which were covered with mud and so obscured his vision. Appellants continue:
"Further, he did nothing to slow his vehicle or to back off or to fall behind in order to keep his windshield, windows or mirror clear. Thus, one has to ask themselves what was going on in Mr. Veals' mind or what was his problem so as to cause him to fail to perceive all of the things that an ordinary driver perceives while driving along a road under such operating conditions. He has problems seeing out of his windows, which he claims were covered with mud, his mirrors are covered up and yet he doesn't back off or fall behind the vehicle that he says is splashing mud on his windshield. He stays two truck lengths behind that *920 vehicle. He sees the vehicle slowing down indicating a turn for more than 10 seconds and doesn't attempt to back off or to move to the left lane to go around the vehicle. There was no indication of other traffic and in fact the investigation clearly indicated that there were no other vehicles in the vicinity and no eye-witnesses to the event. What then was Mr. Veals' problem that prevented him from acting prudently under the circumstances and in avoiding the collision with a legally operating, legally right turning vehicle off of a main highway.
. . . . .
Could the use of marijuana on the day of the accident have accounted for the outrageous conduct and behavior of Mr. Veals in driving his vehicle into the rear of a turning vehicle at 50 m.p.h. in spite of the fact that he saw that vehicle turning and slowing more than 10 seconds before the accident."
Pursuant to a "Sugar Contract" dated March 22, 1983, Supreme Sugar agreed to sell and deliver to MSB liquid sugar. Nothing in the contract addressed inspection or maintenance of the MSB vehicle. A delivery receipt in the record shows that the MSB vehicle was received June 15, 1983 at 6:40 a.m. and discharged at 8:35 a.m. During that time, the sugar tank was sanitized and loaded to full capacity by employees of Supreme Sugar. There is no evidence in the record of Mr. Veals' behavior or appearance while at the Supreme Sugar facility. There is no testimony, proof, exhibits, affidavits, etc., which describe Mr. Veals' conduct or actions in the record, except Mr. Veals' own deposition and the copies of medical reports on him after the accident. While the deposition certainly calls Mr. Veals' conduct just prior to the accident into question, there is no admission therein of any illegal drug consumption. The medical reports make no such findings.
Appellants conclude that because Mr. Veals was charged with possession of marijuana; because he was driving his vehicle with mud obscuring his vision; and then because he was involved in the accident, that Mr. Veals was ipso facto under the influence of marijuana and therefore guilty of such behavior so as to have alerted Supreme Sugar's employees that he was so impaired. After examination of the record, we conclude that there are no facts which point to any conduct on the part of Mr. Veals which would have given notice to appellee that Veals was under the influence of drugs. We specifically do not pass on the question of whether or not Veals did or did not consume drugs, or the relationship of any such finding to the accident in question. Rather, we emphasize that the record is absent of any proof that if Veals was intoxicated, that he behaved in such a manner so as to put appellee on notice of such.
Furthermore, even if Veals had been acting in a manner so as to indicate drug or other intoxication, we see no duty on the part of Supreme Sugar to have prevented Veals from leaving its plant. In Sanders v. Hercules Sheet Metal, Inc., 385 So.2d 772 (La.1980), the Supreme Court discussed the duty of an employer who provided liquor for its employees at a party to an intoxicated employee. The court stated:
In Thrasher v. Leggett, 373 So.2d 494 (La.1979), we examined the duty owed by a bar owner to an intoxicated patron. Even if we accept plaintiff's allegation that his employer provided its employees with the Christmas party solely for the benefit of the employer's business, defendant would have no higher standard of duty than a bar owner. We found that duty, under C.C. 2315 and 2316, is to avoid affirmative acts which increase the risk of peril to an intoxicated person. The bar owner is not however responsible for harm caused by the patron's inebriated condition itself. We also found that the proximate cause of harm is more nearly the act of voluntarily drinking to the point of intoxication, a form of contributory negligence, not the act of making the alcohol available for consumption. Viewing the situation before us here most favorably to plaintiff, defendant committed no affirmative act which increased plaintiff's peril. Evicting plaintiff from the party, onto a busy *921 street, might have been such an affirmative act, but permitting him to leave the party was not. Rather, plaintiff caused the danger to himself, first by drinking to the point of intoxication, then by choosing to drive home aloneafter first driving a considerable distance in search of fireworksinstead of returning directly home in the company of his wife.
Because reasonable minds must inevitably conclude that plaintiff's employer was not negligent, even if the accident were caused by plaintiff's intoxication, defendant was entitled to summary judgment on the issue of its tort liability.
The recent case of LeBlanc v. Adams, 510 So.2d 678 (La.App. 4 Cir.1987) finds that such holding (that a provider of alcohol incurs no liability unless he performs an affirmative act which increases the peril) is not changed under the doctrine of comparative negligence, a rationale with which we agree. Therefore, it seems clear that if a provider of an intoxicant is not liable absent an affirmative act, that a non-provider cannot be liable. There is no allegation that any employees of Supreme Sugar took any affirmative act to increase Veals' peril (assuming such peril existed).
Furthermore, it is well settled that there is no duty to control the actions of a third person and thereby prevent him from causing harm to another unless some special relationship exists to give rise to such a duty. Smith v. Howard, 489 So.2d 1037 (La.App. 1 Cir.1986); Landry v. St. Charles Inn, Inc., 446 So.2d 1246 (La.App. 4 Cir.1984). We find no such special relationship between Supreme Sugar, Veals, Enterprise or any party. The only relationship which appellant has with any party was a contractual one obliging it to provide liquid sugar to MSB for a specific price. The contract did not encompass or embrace any obligation of Supreme Sugar to prevent harm by or to a third person such as Veals or Guillory. The contract gave Supreme Sugar no supervision or control over either Veals or his vehicle.
Thereby also falls the argument of Veals that Supreme Sugar had the vehicle within its custody and it therefore liable for the defective condition of the brakes, etc. Supreme Sugar had no contractual obligation to inspect or repair the tractor-trailer, and so cannot be liable in negligence for having failed to do so. Neither can it be liable under LSA-C.C. Art. 2317[1] which appellee Veals appears to urge on appeal. Custody means supervision and control. Colleps v. State Farm General Ins. Co., 446 So.2d 988 (La.App. 3 Cir.1984); Smith v. Chemical Construction Corporation, 215 So.2d 530 (La.App. 1 Cir.1968). An injured party seeking damages under LSA-C.C. Art. 2317 must prove as a threshold determination that the defective thing was in the custody of the defendant, as well as that the thing had a vice or defect. See Shipp v. City of Alexandria, 395 So.2d 727 (La.1981); Jones v. City of Baton Rouge, 388 So.2d 737 (La.1980). Supreme Sugar had no such custody as envisioned by Article 2317.
The cases cited by plaintiff such as Rodriguez v. New Orleans Public Service, Inc., 400 So.2d 884 (La.1981) and Harris v. Pizza Hut of Louisiana, Inc., 455 So.2d 1364 (La.1984), are inapplicable to the present case since they deal with the duty of a business to provide a safe place for its customers. Such is not the situation in the present case.
Persons are liable for acts of commission and omission that cause damage to another under La.Civ.Code Arts. 2315 and 2316 if a duty imposed by the relationship of the parties is breached by such act or omission. Smith v. Travelers, Inc. So., 430 So.2d 55 (La.1983). Even if appellees were able to prove causation, there was no duty which was breached by Supreme Sugar so as to attach liability.
There being no genuine issue of material fact as to the relationship of Supreme Sugar *922 to the defendants (neither appellant urges that Supreme Sugar had any connection to the parties other than by virtue of the sugar supply contract), appellee was entitled to summary judgment as a matter of law.[2] Appellants can point to no facts which give rise to a duty by Supreme Sugar.
Accordingly, the judgment in favor of Supreme Sugar Company dismissing it from these proceedings is affirmed. Appellants are taxed each their proportionate share of the costs of these proceedings.
AFFIRMED.
NOTES
[1] LSA C.C. Art. 2317 states:

We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody. This, however, is to be understood with the following modifications.
[2] LSA-C.C.P. art. 966(B) states in pertinent part:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.