**Sheila Renee White MAYO, Individually and as Administratix of her Minor Children, Rina Mayo, Jaclyn Mayo and Paige Mayo, Plaintiffs–Appellants,**

v.

**HYATT CORPORATION, Defendant–Appellee.**

No. 89–3576

Summary Calendar.

United States Court of Appeals, Fifth Circuit.

April 10, 1990.

Joseph Maselli, Jr., Plauche & Maselli, New Orleans, La., for plaintiffs-appellants.

Craig R. Nelson, Sarah A. Lowman, Hulse, Nelson & Wanek, New Orleans, La., for defendant-appellee.

Before POLITZ, GARWOOD and JOLLY, Circuit Judges.

GARWOOD, Circuit Judge:

Plaintiffs Sheila Renee Mayo and her three minor children (collectively, plaintiffs) appeal the district court's summary judgment dismissing their claims against the Hyatt Corporation (Hyatt) for the death of Jack Mayo, Jr. (Mayo), their husband and father. 718 F.Supp. 19. We affirm.

## Facts and Proceedings Below

The uncontested facts in this case indicate that shortly before midnight on February 17, 1987, Mayo fell down several steps at the Hyatt Regency Hotel in New Orleans. He cracked his skull in the fall, and died from his injuries three days later. Blood tests performed after the accident indicate that he had a blood alcohol level in excess of three times the legal limit for alcohol intoxication, and that he had ingested a substantial amount of cocaine.

According to the undisputed and unchallenged deposition testimony of Mark Heitzmann (Heitzmann), a security officer employed by Hyatt, the accident occurred as follows: About an hour before the accident, Heitzmann observed Mayo on the second floor level of Poydras Mall, adjacent to the Hyatt premises. Mayo appeared intoxicated at the time, but asked Heitzmann for directions to a nearby bar. Heitzmann obliged by directing Mayo to Georgie Porgie's in the Poydras Mall. Georgie Porgie's is not on the Hyatt premises and is not affiliated with Hyatt.

Just before midnight, Heitzmann encountered Mayo again, this time on what was apparently his return trip from Georgie Porgie's. Mayo told Heitzmann that he was a guest at the Hyatt but did not know his room number and had lost his key. At that point, Mayo was wobbling and having difficulty speaking coherently, from which Heitzmann surmised that he was highly intoxicated. Consequently, Heitzmann offered to assist Mayo to the Hyatt's registration desk on the first floor to help Mayo get to his room.

Heitzmann suggested taking the elevator down to the first floor. Inexplicably, Mayo refused and began walking to the stairs instead. Heitzmann accompanied Mayo down the stairs, but within a few steps Mayo began to stumble and fall. Heitzmann caught him and interlocked his arm with Mayo's, holding him up. Mayo protested that he was under control and jerked his arm away from Heitzmann. After breaking away, Mayo began to descend the stairs much more rapidly. A few steps later, he lost his balance, spun around, and fell backwards down the stairs hitting the back of his head on the floor. Immediately after the accident, Hyatt employees secured an ambulance and sent Mayo to the Tulane Medical Center for medical attention.[1]

The stairs were carpeted, well-lit, and had hand rails on either side and in the middle; there is no indication of any defect in the design or condition of stairs, carpet, or hand rails, or that any foreign substance was present; and, since the Hyatt opened in 1965 there had been no reported falls by guests on these stairs. Indeed, the plaintiffs do not allege that the physical condition or character of the stairs was in any way defective or responsible for the accident or that Hyatt's maintenance of its premises was improper or negligent or contributed in any way to Mayo's injuries. The sole focus of the plaintiffs' theory of recovery is that Heitzmann negligently failed to protect Mayo from the consequences of his own intoxication. The district court held that as a matter of Louisiana law Hyatt had no duty to protect Mayo under these circumstances, and therefore it granted Hyatt's motion for summary judgment.

## Discussion

The district court observed that Louisiana law unambiguously places the responsibility for the consequences of intoxication on the intoxicated person, and expressly disclaims "dramshop" liability. See La.R.S. § 9:2800.1(A) ("The legislature finds and declares that the consumption of intoxicating beverages, rather than the sale or serving or furnishing of such beverages, is the proximate cause of any injury, in-

---

1. The doctor on duty at the Tulane Medical Center failed to diagnose Mayo's multiple skull fractures, a failure which the plaintiffs alleged was grossly negligent. The doctor and the medical center were originally named as defendants in this action, but have since reached an out-of-court settlement with the plaintiffs and been dismissed. In addition, the original complaint named a second doctor and Georgie Porgie's, but both these parties were dismissed voluntarily at the plaintiffs' request before either party had filed an answer.

cluding death and property damage, inflicted by an intoxicated person upon himself or upon another person.") Thus, the sole duty of a seller of alcoholic beverages is to avoid taking "affirmative acts which increase the peril to an intoxicated person." *Thrasher v. Leggett,* 373 So.2d 494, 497 (La.1979).

As the district court pointed out, Louisiana courts apply the same rule in the specific context of an innkeeper-guest relationship. *See Gregor v. Constitution State Ins. Co.,* 534 So.2d 1340, 1342–43 (Ct.App. 1988), *writ denied,* 536 So.2d 1238 (La. 1989). In *Gregor,* the plaintiff drank himself to intoxication at the bar of the bunkhouse where he resided, then climbed onto the roof of the building to remove some junk stored there, only to fall off the roof and injure his back. The court held that an innkeeper would not be liable for the injuries sustained by his intoxicated guest during the fall, because while the innkeeper owed his guests a high degree of care and protection, including the duty to maintain his premises in a reasonably safe condition, he had no duty to make his premises "inebriate proof." The court concluded:

> "In *Thrasher v. Leggett,* supra, the Louisiana Supreme Court relied heavily on the idea that man has a free will and is responsible for harm to himself as a result of voluntary intoxication. In the case at bar, as in *Thrasher,* the cause more proximate to plaintiff's injuries was his voluntary intoxication, not the conduct of any of the defendants." *Id.* at 1344.

Absent affirmative acts increasing peril to the plaintiff, the court denied his claim for relief.

Moreover, the Louisiana courts have indicated that if a provider of intoxicated beverages cannot be liable absent an affirmative act, *a fortiori* a nonprovider should be held to no higher standard. *See Enterprise Transp. Co. v. Veals,* 532 So.2d 917, 921 (La.Ct.App.1988). Thus, in the present case the district court concluded that Hyatt's sole duty to Mayo under Louisiana law was to refrain from affirmative acts that increased the peril to him as a result

of his intoxication. Certainly there is no on-point or very closely analogous Louisiana authority to the contrary. Ordinarily, on such issues we accord significant consideration to the interpretation of local law by the district judge who sits in the state. *E.g., Mitchell v. Random House,* 865 F.2d 664, 668 (5th Cir.1989); *Commonwealth Life Ins. Co. v. Neal,* 669 F.2d 300, 304 (5th Cir.1982). Further, it is not for us to adopt innovative theories of recovery under state law. *See, e.g., Mitchell* at 672.

Applying these principles in the present case, we affirm the district court's summary judgment. Plaintiffs have failed to produce any evidence whatsoever of an affirmative act on the part of Hyatt that increased the peril to Mayo. Plaintiffs' recovery theory is premised on the testimony of its expert witness on security matters, who suggested that Heitzmann had inadequate training as a security officer and that a more competent security guard would have taken virtually any measure to cajole, persuade, coerce, or forcibly restrain Mayo from approaching the stairs on which he was injured. Whether or not a better trained security guard would in fact have taken these steps, however, is irrelevant. As a matter of Louisiana law, Hyatt had *no* duty to do anything to protect Mayo from the consequences of his own intoxication, aside from maintaining its premises in a reasonably safe condition and refraining from affirmative acts that increased his peril.

The plaintiffs do not allege that Hyatt failed to maintain its premises in a reasonably safe condition or that the stairs were in any way defective. Moreover, we agree with the district court that the plaintiffs have wholly failed to produce any evidence of any affirmative act on the part of Hyatt or its agents increasing the peril to Mayo as a result of his intoxication. This complete failure of proof on an essential element of plaintiffs' case "necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). As such, the district court correctly granted Hyatt's motion for summary judgment.

### Conclusion

For these reasons, the judgment of the district court is AFFIRMED.