FREDERICKA HOMBERG WICKER, Judge.
IsThis appeal, which arises from a peculiar set of facts, presents this Court with a res nova issue. In this case, we are called upon to determine whether a remedy exists under the law in a case where a third party loses money at a gaming establishment through the criminal activities of another. The court below determined that no cause and no right of action existed in this case. Upon careful review of the record and jurisprudence, we can find no basis to disturb the trial court’s ruling. The judgment appealed from is affirmed. Procedural Background
The plaintiff/appellant, NOLA 180, as manager of Langston Hughes Academy Charter School (“LHA”), filed a petition for damages on June 21, 2010, against the defendants/appellees, Treasure Chest Casino, LLC and Boyd Gaming Corporation (collectively “Treasure Chest”). The petition alleges that NOLA 180 was damaged as a result of Treasure Chest’s activities in the operation of its casino. It contends that Treasure Chest is responsible for damages sustained when |3LHA’s former financial officer, Ms. Kelly Thompson, embezzled approximately $667,000 from the school, losing a substantial amount of those funds on the slot machines at Treasure Chest.[1]
On August 16, 2010, Treasure Chest excepted to the petition on the grounds of no right and no cause of action. It relied upon La. R.S. 27:27.1(H) to argue that casinos have no duty to identify compulsive or problem gamblers. The trial on the exceptions was held on September 29, 2010. The trial court sustained the exceptions in open court, and the judgment was reduced to writing on October 8, 2010. In addition to ruling on the exceptions, however, the judgment further provided, “IT IS FURTHER ORDERED that Plaintiff has 90 days to complete discovery and to amend its Petition to state a cause of action against these Defendants.”
NOLA 180 then moved for a new trial on October 18, 2010. However, on November 24, 2010, the parties confected a consent judgment wherein the trial court vacated the above-referenced portion of the judgment, substituting it with the following: “IT IS FURTHER ORDERED that Plaintiff has ninety days to complete discovery and to amend its Petition to state a cause of action and a right of action against these Defendants.” (Emphasis Added).[2] Treasure Chest noted its intent to seek supervisory review of the November 24th consent judgment. This Court granted the writ in part and denied it in part, finding that the trial court erred in granting discovery before the defects in the petition were cured. NOLA 180 v. Treasure Chest Casino, LLC., 10-1093 (La. App. 5 Cir. 1/27/11) (unpublished writ).
*449 Thereafter, NOLA 180 filed a supplemental and amended petition on March 15, 2011. Treasure Chest reurged its exceptions of no right and no cause of action. I/The exceptions were heard on May 27, 2011, and were granted in open court. NOLA 180 appeals the trial court’s ruling. Discussion

First Assignment of Error

NOLA 180 asserts three theories of recovery against Treasure Chest. It claims relief under the Louisiana Unfair Trade Practices Act (“LUTPA”), in tort for general negligence, and under the “Abuse of Rights” doctrine. It contends that the trial court erred by granting Treasure Chest’s exception of no cause of action.
In reviewing a trial court’s ruling on a peremptory exception of no cause of action, appellate courts conduct a de novo review because the exception raises a question of law and the lower court’s decision is based solely on the sufficiency of the petition. Wood v. Omni Bancshares, Inc., 10-216 (La.App. 5 Cir. 4/26/11), 69 So.3d 475, 479, citing, Ramey v. DeCaire, 03-1299, p. 7-8 (La.3/19/04), 869 So.2d 114, 119.
The purpose of the exception of no cause of action is to question whether the law extends a remedy to anyone under the factual allegations of the petition. Id., citing, Albarado v. Abadie, 97-478, p. 2 (La.App. 5 Cir. 11/12/97), 703 So.2d 736, 740. (citation omitted). Cause of action, as used in the context of the peremptory exception, means the operative facts which give rise to the plaintiffs right to judicially assert the action against the defendant. Id.
No evidence may be introduced at any time to support or controvert the objection that the petition fails to state a cause of action. La. C.C.P. art. 931. Therefore, an exception of no cause of action is triable solely on the face of the petition. Wood, supra. All well-pleaded allegations of fact are accepted as true, and if the allegations set forth a cause of action as to any part of the demand, the | ¡¡exception must be overruled. Id.; See also Lambert v. Riverboat Gaming Enforcement Div., 96-1856, p. 4 (La.App. 1 Cir. 12/29/97), 706 So.2d 172,175.

Louisiana Unfair Trade Practices Act

The LUTPA, embodied in La. R.S. 51:1405 et seq., makes “unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce” unlawful. La. R.S. 51:1405. A practice is “unfair” when it offends established public policy and when the practice is unethical, oppressive, unscrupulous or substantially injurious. Hernaez v. Mothe Life Ins. Co., 09-147, p. 7 (La.App. 5 Cir. 11/10/09), 28 So.3d 454, 458; see Risk Management Services, LLC v. Moss, 09-632, p. 11 (La.App. 5 Cir. 4/13/2010), 40 So.3d 176,185.
As this Court has explained:
[A]cts which constitute unfair or deceptive practices are not specifically defined in the statute and are determined by the courts on a case-by-case basis.... In order to recover damages for a claim made under this act, a plaintiff must prove that the conduct offends public policy, is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.... For conduct to be unfair it must offend established public policy.... Fraud, deceit and misrepresentation constitute deceptive practices ....
Hemaez, supra, at 458.
Traditionally, Louisiana courts have limited causes of action under LUTPA to consumers and business competitors. See Risk Mgmt. Serv., LLC v. Moss, 09-632 p. *450 10 (La.App. 5 Cir. 4/13/10), 40 So.3d 176, 184 (“a right of action exists under LUT-PA only for consumers or business competitors”); Levine v. First Nat. Bank of Commerce, 02-1114, p. 5 (La.App. 5 Cir. 4/29/03), 845 So.2d 1189, 1193 (an action under LUTPA is a personal right of action applying only to direct consumers or to business competitors); Davis v. Manpower Int’l, Inc., 623 So.2d 946, 947 (La.App. 4 Cir.1993), writ denied, 629 So.2d 1173 (La. 1993) (“plaintiff was not a business competitor of the defendant within the meaning of the Unfair Trade Practices Act”); Vermilion Hosp., Inc. v. Patout, 05-82, p. 4 (La.App. 3 Cir. 6/8/05), 906 So.2d 688, 692 (“Louisiana courts, both state and federal, have uniformly held the personal right of action granted under LUTPA applies only to direct consumers or to business competitors”); and Schenck v. Living Ctrs.-East, Inc., 94-2514 (E.D.La.2/21/1996), 917 F.Supp. 432, 438 (“the statute [LUTPA] protects consumers and business competitors”).
More recently, however, the Louisiana Supreme Court expanded LUTPA to grant a right of action to “any person, natural or juridical, who suffers an ascertainable loss as a result of another person’s use of unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce.” Cheramie Serv., Inc. v. Shell Deepwater Prod., Inc., 09-1633, p. 6 (La.4/23/10), 35 So.3d 1053, 1057. The Supreme Court added, “[ajlthough business consumers and competitors are included in the group afforded this private right of action, they are not its exclusive members.” Id. (citation omitted). Thus, in keeping with this holding, we find that a private right of action exists under LUTPA for all persons. However, to sustain a cause of action under LUTPA, Cheramie promulgated a two-prong test: 1) the person must suffer an ascertainable loss; and 2) the loss must result from another’s use of unfair methods of competition and unfair or deceptive acts or practices.
There is no dispute here that NOLA 180 has sustained an ascertainable loss in excess of $667,000, thereby satisfying the first prong under Cheramie. The next inquiry, however, is whether NOLA !80’s loss resulted from Treasure Chest’s unfair or deceptive trade practices.
In order for a practice to be unfair, it must offend established public policy and be unethical, oppressive, unscrupulous, or substantially injurious. The allegations set forth in NOLA 180’s petition, however, fail to show, that Treasure |7Chest committed any egregious actions that are inherently fraudulent, unethical, or deceitful or that offend established public policy. On the contrary, the Second Circuit, in Strong v. Eldorado Casino Shreveport Joint Venture, 46,464, p. 9 (La.App. 2 Cir. 8/10/11), 73 So.3d 967, stated that Louisiana’s public policy favors strictly regulated legalized gaming to promote the state’s economic development. This sentiment, which is codified in La. R.S. 27:202(B)(1), provides, that “[t]he development of a controlled gaming industry is important to the development of the economy of the state of Louisiana in that it will assist in the continuing growth of the tourism industry and thus will benefit the general welfare of our citizens.” Moreover, La. R.S. 27:42(A)(1) and (3) provides:
A. The legislature hereby finds and declares to be the public policy of this state that:
(1) The development of a historic riverboat industry is important to the economy of the state of Louisiana in that it will assist in the continuing growth of the tourism industry and thus will benefit the general welfare of our citizens and create new jobs. It is the intent of *451 this Chapter to utilize Louisiana resources, goods, and services in the operation and construction of riverboats to the extent allowable by law, as defined in this Chapter.
* * * *
(3) The nature of the riverboat industry is such that the operation of riverboats on the waters of the state of Louisiana while allowing certain gaining activities will result in many benefits to the state with no significant detriment to the citizens of the state.
Thus, these statutes reveal that the Louisiana legislature strongly favors and supports the gaming industry and has found that gaming has no significant detriment to the citizens of this state.
Nevertheless, NOLA 180 alleges that Treasure Chest fostered Ms. Thompson’s gambling at the casino by assigning her a “handler” host and by giving her complimentary services, i.e., lodging, food, spa services, etc. These | sactions, however, constitute normal business practices in the gaming industry. And Louisiana jurisprudence has declined to find a LUTPA violation when the alleged conduct was simply a “normal business relationship.” JCD Mktg. Co. v. Bass Hotels and Resorts, Inc., 01-1096 (La.App. 4 Cir. 3/6/02), 812 So.2d 834, 842.
Accordingly, we find that NOLA 180’s petition fails the second prong of Cheramie. The factual allegations in the petition do not show that NOLA 180’s loss resulted from Treasure Chest’s unfair methods of competition and unfair or deceptive practices. Thus, the trial court correctly determined that NOLA 180 has no cause of action under LUTPA.

Duty of Care

Next, NOLA 180 contends that Treasure Chest breached its duty of care when it failed to identify Ms. Thompson as a compulsive or problem gambler. To rebut this argument, Treasure Chest cites La. R.S. 27:27.1(H), which provides, “[t]he provisions of this Section shall not require the board, division, licensees, permittees, the casino gaming operator, and the employees thereof to identify problem or compulsive gamblers which is an activity that requires medical and clinical expertise.” Notably, however, section C(4) of that statute provides that casinos shall provide a comprehensive program that shall “[pjrovide procedures for the training of all employees that interact with gaming patrons in gaming areas to report suspected problem gamblers to supervisors who shall be trained as provided in this Paragraph.” At first blush, these two sections appear contradictory. However, subsection (C)(4) deals with the reporting of suspected problem gamblers, while section (H) deals with the identification of problem or compulsive gamblers — which the statute expressly states requires medical or clinical expertise.
| aAs NOLA 180 recognizes, Louisiana jurisprudence is absent on the specific issue presently before this Court. No Louisiana court has specifically determined whether, in cases such as this, casinos owe a duty of care to third persons who sustain a loss through the criminal acts of another when such criminal acts occurred away from the casino’s premises. The Eastern District of Louisiana, however, in Sherman v. Harrah’s New Orleans Casino, et al., 06-2379, (E.D.La.2/12/2008), (unpublished order) has discussed whether casinos have a duty to identify compulsive or problem gamblers. We recognize, as does NOLA 180, that Sherman was before the court on a motion for summary judgment. We, nevertheless, find the court’s reasoning compelling. In that case, the court stated:
*452 The Court notes the specific language of the provision, in which the legislature expressly stated that identifying problem or compulsive gamblers “is an activity that requires medical and clinical expertise.” The legislature explicitly refused to require a casino or its employees to identify problem gamblers; consequently, the Court refuses to impose a duty on a casino employee which has not been imposed by the legislature .... To do so would require the Court to impose a greater duty on a casino than the law requires. (Emphasis Added).
NOLA 180 contends that Sherman is inapplicable here because the court only discussed a casino’s duty to its own patron. It stands to reason, however, that if a casino has no duty to protect a patron from himself, neither does it have a duty to protect a third party from whom the patron may have allegedly stolen funds.
Generally, there is no duty to protect others from the criminal activities of third persons. Harris v. Pizza Hut of Louisiana, Inc., 455 So.2d 1364, 1371 (La. 1984). Yet, NOLA 180 contends that Treasure Chest had a duty to protect it from Ms. Thompson’s criminal acts. The cases upon which NOLA 180 relies, however, are inapplicable to the facts of this case. See Hams, supra (three armed robbers entered Pizza Hut and injured two patrons and killed another); Gardner v. Griffin, 97-0379 (La.App. 1 Cir. 4/8/98), 712 So.2d 583 (plaintiff sustained injuries after being attacked in city/parish’s parking garage); and Potter v. First Fed. Sav. & Loan Ass’n of Scotlandville, 615 So.2d 318 (La.1993) (plaintiff was raped in the poorly lit parking lot of her apartment complex). In each of those cases, the third-party criminal act occurred on the defendants’ premises. In this case, however, the third-party criminal activity, i.e. the embezzlement, occurred before Ms. Thompson entered the casino, presumably on NOLA 180’s premises. It is well settled that there is no duty to control the actions of a third person and thereby prevent him from causing harm to another unless some special relationship exists to give rise to such a duty. Enter. Transp. Co. v. Veals, 532 So.2d 917, 921 (La.Ct. App.1988). In this case, no special relationship existed between NOLA 180 and Treasure Chest.
We, therefore, find that the trial court correctly determined that Treasure Chest did not owe a duty of care to NOLA 180. NOLA 180 was not Treasure Chest’s patron, was never victimized on Treasure Chest’s premises, and had no special relationship with Treasure Chest.

Abuse of Rights

Finally, NOLA 180 asserts a cause of action under the “Abuse of Rights” doctrine. It alleges that Treasure Chest abused the exercise of its legal right by promoting and fostering Ms. Thompson’s compulsive and addictive gambling. This doctrine, which was first promulgated in Morse v. J. Ray McDermott & Co., 344 So.2d 1353 (La.1977), applies only when one of the following conditions are satisfied:
(1) the predominant motive for exercise of the right is to cause harm;
(2) there is no serious or legitimate motive for exercise of the right;
|n(3) the exercise of the right violates moral rules, good faith, or elementary fairness; or
(4) the exercise of the right is for a purpose other than that for which it was granted.
Steier v. Heller, 31,733 (La.App. 2 Cir. 5/5/99), 732 So.2d 787, 791.
NOLA 180 contends that it has a cause of action under the third abuse of *453 rights factor. This argument, however, is contingent upon a finding that Treasure Chest had a duty to identify Ms. Thompson as a problem gambler. Yet, we have already determined that such a diagnosis requires medical or clinical expertise, which is something Treasure Chest is not qualified to do. See La. R.S. 27:21.1(H). The abuse of rights doctrine has been invoked sparingly in Louisiana. Id. at 790. It is a civilian concept which is applied only in limited circumstances because its application renders unenforceable one’s otherwise judicially protected rights. Id. The trial court correctly determined that such doctrine is inapplicable here.
This Court has previously held that a petition should not be dismissed for failure to state a cause of action unless it appears beyond doubt that the plaintiff can prove no set of facts in support of any claim which would entitle him to relief. Guidry v. Hanover Ins. Co., 09-220 (La.App. 5 Cir. 11/10/09), 28 So.3d 426, 429, writ denied, 09-2701 (La.2/26/10), 28 So.3d 272. After carefully reviewing the record and law applicable to this case, we find that the trial court was correct in its determination that the factual allegations set forth in the petition do not entitle NOLA 180 to relief under LUTPA, abuse of rights, or in tort. Therefore, this assignment of error is without merit.

112iSecond Assignment of Error

Next, NOLA 180 contends that the trial court erred by granting the exception of no right of action.
The peremptory exception of no right of action tests whether the plaintiff has the capacity or legal interest in judicially enforcing the right asserted. 3218 Magazine, L.L.C. v. Lloyds of London, 08-727 (La.App. 5 Cir. 2/25/09), 10 So.3d 242, 243 (citation omitted). An exception of no right of action assumes that the petition states a valid cause of action and questions whether the plaintiff in the particular case has a legal interest in the subject matter of the litigation. Id. In this case, however, we have already determined that the petition fails to state any causes of action. Therefore, this assignment of error is rendered moot.
Conclusion
For the reasons stated above, we find that the trial court did not err in granting the exceptions of no cause and no right of action. NOLA 180’s petition does not state a cause of action under LUTPA, because it has failed to show that its loss resulted from Treasure Chest’s unfair methods of competition and unfair or deceptive practices. We further find that the trial court correctly determined that Treasure Chest did not owe a duty of care to NOLA 180. NOLA 180 was not Treasure Chest’s patron, was never victimized on Treasure Chest’s premises, and had no special relationship with Treasure Chest. And finally, we find that the abuse of rights doctrine is inapplicable in this case. Accordingly, the judgment appealed from is affirmed.

AFFIRMED

. Ms. Thompson was subsequently convicted of "theft from an organization receiving federal funds" in violation of 18 USC § 666(a)(1)(A) in the United States District Court in the Eastern District of Louisiana.

. The parties agreed that the Consent Judgment obviated the need for a hearing on NOLA 180's motion for new trial.