MAX N. TOBIAS, JR., Judge.
h Blake Robertson (“Blake”), the plaintiff, appeals the involuntary dismissal of his lawsuit with prejudice against his father, Arthur Robertson (“Mr. Robertson”), and Lafayette Insurance Company (“Lafayette”). After reviewing the record and applicable law, we affirm the lower court’s judgment.
This matter arose after Blake fell off the roof of a house owned by his parents, Mr. Robertson and Mrs. Linda Robertson, sustaining injuries. Suit was originally filed on 9 January 2008 against Lafayette only and was properly served upon it. Lafayette filed an exception of no cause of action that was set for hearing on 23 May 2008. Neither Blake nor his counsel appeared for that hearing and his claims were dismissed without prejudice in a judgment dated 5 June 2008. Blake requested, and was granted, a new trial on the exception.
On 20 October 2008, Blake filed a supplemental and amending petition that added some new allegations against Lafayette and named Mr. and Mrs. Robertson as parties defendants. Service of the supplemental and amending petition was made on Lafayette, but the plaintiff requested that service on the Mr. and Mrs. Robertson |2be withheld. Lafayette filed a motion for summary judgment that was opposed by Blake; the motion was ultimately denied. Discovery occurred as reflected by Blake’s deposition of 28 July 2009 and Blake’s responses to interrogatories and requests for production, both of which were attached to the motion for summary judgment.[1]
On 7 July 2010, Lafayette moved the trial court to conduct a status conference, which was scheduled to occur telephonically on 5 August 2010, and to provide the parties with discovery deadlines and a trial date. The district court, as a result of a scheduling conference, issued a trial order on 5 August 2010 that in pertinent part states that “counsel certifies that all potential parties had been served, and answered.” The order required the parties to file witness lists on specific dates, 10 November 2010 for the plaintiff and 24 *188 November 2010 for the defendants. Although the order is not signed by the parties or their counsel, it is presumed that both counselors participated in its confection as no allegation has been made to the contrary in this appeal.[2] The order reflects that it was mailed, apparently to counsel.
Blake neither caused Mr. and Mrs. Robertson to be served with citation following the status conference nor filed a witness list. On 15 November 2010, [3Lafayette moved the trial court to strike all of Blake’s witnesses once the deadline for his filing a witness list had expired. That motion was set for hearing on 17 December 2010. Blake’s counsel failed to appear for that hearing at which time the district court granted the motion.[3] Blake sought no supervisory review of that interlocutory judgment and never filed a witness list.[4]
Trial was scheduled to commence on Tuesday, 15 February 2011. Lafayette and its counsel appeared for trial; however, neither Blake nor his counsel was present. It was discovered that plaintiffs counsel had left voicemail messages for Lafayette’s counsel as well as for the trial court at some time between 8:30 and 9:00 a.m. on the morning of trial, stating that she was ill, thereby requesting a continuance. The defendants moved for, and were granted, an involuntary dismissal with prejudice of Blake’s lawsuit. See La. C.C.P. art. 1672. It is unclear whether either defendants’ counsel or the trial court was aware of Blake’s counsel’s telephone calls before the trial court dismissed the suit.
Blake filed a motion for new trial, arguing that his counsel had been very ill and that should have been a valid excuse to fail to appear for trial, although counsel failed to advise the court or the defendants of such on Monday, the day Rbefore the trial.[5] During the discussion of the motion, Blake’s counsel recalled that no answer was filed on behalf of Mr. and Mrs. Robertson and that they had never been served with the supplemental and amended petition. The trial court recessed for the weekend, allowing counsel to prepare to argue the meaning of this development. *189 The plaintiffs counsel then filed into the record a waiver of service signed by Mr. Robertson on 20 October 2008, obtained by her but not previously filed into the record.[6] Although Mr. and Mrs. Robertson were never served, Lafayette’s counsel waived Mr. Robertson’s objection to personal jurisdiction for lack of service on the morning of trial. At the close of the hearing, the trial court denied the motion for new trial and this appeal followed.
Blake alleges that the trial court erred by (1) setting the matter for trial when Mr. and Mrs. Robertson had not filed an answer, (2) striking all of the plaintiffs witnesses, including the plaintiff himself, (3)failing to grant the plaintiffs verbal motion for a continuance on the morning of trial due to his counsel’s illness, and (4) denying the motion for new trial to set aside the involuntary dismissal.
The issue of Mr. and Mrs. Robertson’s failure to file an answer is moot as Lafayette’s counsel made an appearance for Mr. Robertson appeared at trial, thereby waiving service and jurisdiction. We find the failure of Mr. Robertson to file an answer has no bearing on this case.[7]
[fiWe next address the striking of the plaintiffs witnesses for failure to file a witness list. Our courts have long held that the theory inherent in pre-trial civil procedure is to avoid surprise and to permit an orderly disposition of the case. Eanes v. McKnight, 262 La. 915, 931-32, 265 So.2d 220, 226-27 (1972); Brooks v. Sewerage and Water Bd. of New Orleans, 02-2246, p. 5 (La.App. 4 Cir. 4/30/03), 847 So.2d 639, 643. It is also well-recognized that the trial court has wide discretion to implement a pretrial order and insure that its terms are enforced. Id.
La. C.C.P. art. 1551 states:
A. In any civil action in a district court the court may in its discretion direct the attorneys for the parties to appear before it for conferences to consider any of the following:
(1) The simplification of the issues, including the elimination of frivolous claims or defenses.
(2) The necessity or desirability of amendments to the pleadings.
(3) What material facts and issues exist without substantial controversy, and what material facts and issues are actually and in good faith controverted.
(4) Proof, stipulations regarding the authenticity of documents, and advance rulings from the court on the admissibility of evidence.
(5) Limitations or restrictions on or regulation of the use of expert testimony under Louisiana Code of Evidence Article 702.
(6) The control and scheduling of discovery including any issues relating to disclosure or discovery of electronically stored information, and the form or forms in which it should be produced.
(7) Any issues' relating to claims of privilege or protection of trial preparation material, and whether the court should include agreements between counsel relating to such issues in an order.
|fi(8) The identification of witnesses, documents, and exhibits.
*190 (9) The presentation of testimony or other evidence by electronic devices.
(10) Such other matters as may aid in the disposition of the action.
B. The court shall render an order which recites the action taken at the conference, the amendments allowed to the pleadings, and the agreements made by the parties as to any of the matters considered, and which limits the issues for trial to those not disposed of by admissions or agreements of counsel. Such order controls the subsequent course of the action, unless modified at the trial to prevent manifest injustice.
C. If a party’s attorney fails to obey a pretrial order, or to appear at the pretrial and scheduling conference, or is substantially unprepared to participate in the conference or fails to participate in good faith, the court, on its own motion or on the motion of a party, after hearing, may make such orders as are just, including orders provided in Article 1471(2), (3), and (4). In lieu of or in addition to any other sanction, the court may require the party or the attorney representing the party or both to pay the reasonable expenses incurred by noncompliance with this Paragraph, including attorney fees.
While a harsh remedy, we cannot say that the trial court abused its discretion by striking Blake’s witnesses for the failure of his counsel to file a witness list.[8] Blake never sought to modify the pretrial order to obtain more time in which to file the list. Further, he had sufficient time before the scheduled trial date to correct the deficiency.
The motion to strike witnesses was filed by Lafayette on 15 November 2010 and set for hearing on 17 December 2010. The rule to show cause was personally served on Blake, through his counsel, on 3 December 2010. The plaintiff could 17have filed a witness list before the hearing and requested the court to dismiss the motion; he did not. Additionally, the plaintiff, through his counsel, did not appear at the hearing. The judgment on the motion was not signed until 4 January 2011 and the notice of judgment was mailed to the following day. Again, with a trial date of 15 February 2011, the plaintiff still had time to take some action in an attempt to remedy the situation, but did not. Therefore, we cannot find an abuse of discretion by the trial court.[9]
An involuntary dismissal for failure to appear is addressed in La. C.C.P. art. 1672, which states in pertinent part:
A. (1) A judgment dismissing an action shall be rendered upon application of any party, when the plaintiff fails to appear on the day set for trial. In such case, the court shall determine whether the judgment of dismissal shall be with or without prejudice.
The standard of review of an involuntary dismissal is abuse of discretion. In O’Rourke v. Nora’s Creole Café, 03-0810, p. 3 (La.App. 4 Cir. 8/13/03), 854 So.2d 976, 978, we stated:
A trial judge’s knowledge of the condition of the court’s docket, fairness not only to both parties but also to other litigants in the court, and the need for an orderly and prompt administration of justice provides the trial judge with superior ability to determine the terms of the dismissal. Keyes v. Johnson, 542 So.2d 209 (La.App. 3 Cir.1989); Malter v. McKinney, 310 So.2d 696, 698 (La.App. 1 Cir.1975). The trial court’s dismissal of a cause of action based upon *191 plaintiffs failure to appear for trial will not be reversed absent a showing that the trial court abused its discretion. Keyes, supra.
We also stated in Hebert v. C.F. Bean Corp., 00-1029, p. 3 (La.App. 4 Cir. 4/25/01), 785 So.2d 1029, 1031:
IsPropriety of a trial court’s grant of a motion for involuntary dismissal for failure to appear for trial is subject to the manifest error standard of review.
No inconsistency exists between O’Rourke and Hebert. If a trial court is manifestly erroneous or clearly wrong in granting an involuntary dismissal, it would simultaneously abuse its discretion in granting the dismissal.
The trial court also has wide discretion when deciding whether to grant a new trial. La. C.C.P. art. 1973. Therefore, we review the denial of a new trial by applying the abuse of discretion standard. Dowl v. Redi Home Health Care Assn., 04-1182, p. 7 (La.App. 4 Cir. 12/22/04), 917 So.2d 434, 440.
After reviewing the record and the repeated failure by the plaintiffs counsel to prosecute this case, we cannot say that the trial court abused its discretion or was manifestly erroneous by granting the motion for involuntary dismissal and denying the motion for new trial. The trial court gave the plaintiffs counsel every opportunity to correct previous mistakes and move this matter forward.
The trial court stated at the hearing on 8 April 2011:
I guess, I’m going to be very honest with you, Ma’am, part of your problem with your motion for new trial is that your track record precedes you and in your track record you have been historically a no show and no response, in this case specifically where we’ve tried to contact you, no response from you, even in this particular case there was just as the Court puts it, pretrial order together with required production of a list of witnesses you failed to even submit witnesses on behalf of your client. I am not clear how you even intended to try to proceed with trial given the fact that you had no witnesses that you would be able to call. I understand but your track record in this case, I feel obligated at this point, defense counsel had been here on more than one occasion by himself dealing with this case and dealing with issues in this case. I’ll tell you, and I probably frustrated the heck out of him because I bent over backwards, Ma’am, to try and not do things that would prejudice your client’s case but the reality become [sic] |flthat when the rubber met the road on the day of the trial and we had not until that morning heard from you, and I’m not suggesting that you were not telling the truth about being sick but it’s very difficult for the Court to work with you when you don’t even seem to be working with me or with opposing counsel on this case, I’m going to be very honest with you, that’s the reality.
We understand that a dismissal with prejudice is highly prejudicial to the plaintiff himself, however, as remarked by the court, this was not the first time the plaintiffs counsel did not appear in court or do something which counsel was required or ordered to do. The trial court was within its discretion to grant the involuntary dismissal and deny the motion for new trial.
Based on the foregoing, we affirm the judgment of the trial court.

AFFIRMED.

. Although the answers to interrogatories and requests for admissions disclosed the name of a doctor and health care facility, it is not a witness list.

. The trial order is signed only by the minute clerk of Division "I” of Civil District Court. We know of no law that allows a minute clerk to sign a trial order. La. C.C.P. art. 1551 B directs that the court, i.e., the judge, sign such an order, not a minute clerk. Theoretically, a minute clerk could sign such an order if directed by the judge and the order affirmatively reflects that it was signed by a deputy clerk of court (of which a minute clerk is one) at the court’s direction; however, the trial order in the record before us contains no such notation. See La. C.C.P. art. 256; La. R.S. 13:1. Nevertheless, Blake has not raised the issue on appeal.

. Our law does now allow a trial court to strike a party as a witness, but may strike all other witnesses under appropriate circumstances. In the case before us, because Blake sustained physical injuries to his person as a result of his fall, it would be incumbent upon him to call a physician to explain his injuries and treatment. Thus, in the case at bar, it was an absolute necessity for Blake to list witnesses because the answers to interrogatories were not a substitute for a witness list. The plaintiff contends that even he would not have been allowed to testify at trial. The judgment states that the plaintiff's witnesses could not testify; the plaintiff is not a witness but a party to the lawsuit. We find nothing in the law or jurisprudence that would prevent a party from testifying at trial. See n. 1, supra; see also Lawless v. Employers Mut. Fire Ins. Co., 263 So.2d 79, 80 (La.App. 1st Cir.1972).

. See Carter v. Rhea, 01-0234 (La.App. 4 Cir. 4/25/01), 785 So.2d 1022.

. As reflected in the record, counsel suffers from severe asthma and had been sick for approximately a month before trial. Although she was feeling better the week before trial, she worsened over the weekend.

. Lafayette's counsel never made an appearance for Mrs. Robertson who did not sign the waiver presented to Mr. Robertson in October 2008 by Blake’s counsel.

. The appealed trial court judgment dismisses only Lafayette and Mr. Robertson; it is silent with respect to Blake’s claims against his mother. We do not address whether Blake’s claims against Mrs. Robertson are still viable.

. See n. 3, supra.

. Ibid.