THERIOT, J.
Composite Architectural Design Systems, LLC (CAD) and 2Long, LLC (2Long) appeal the judgment of the Twenty-Third Judicial District Court that found in favor of Chris Markerson, Jr. and Amy Markerson. 2Long has also filed a peremptory exception of prescription with this Court. For the following reasons, we deny the peremptory exception, affirm the judgment in part, and reverse in part.
*1069 FACTS AND PROCEDURAL HISTORY
In May of 2014, Chris and Amy Markerson purchased a home located in Gonzales, Louisiana. At the time of the purchase, an adjacent lot contained vacant buildings zoned by the City of Gonzales (the City) as "B-1," or a limited business district.[1]
On August 28, 2014, 2Long purchased the adjacent lot and was informed by real estate broker Melissa Warren of the zoning restriction at the time of the closing on August 29, 2014. Ms. Warren advised Todd Long, a member and co-owner of 2Long, that his anticipated business operations on the property may not fall within the zoning restrictions and that he should forward any questions he had regarding the issue to the City. In the weekend following the closing, CAD, who began leasing the disputed property from 2Long, moved its business onto the premises. CAD, an aluminum composite material (ACM) fabricator, was advised by Mr. Long to get in touch with the City regarding zoning restrictions.
CAD was first issued a "retail occupational" business license from the City on September 4, 2014, then renewed the license before its expiration on November 11, 2014. The Markersons alleged that CAD operated its business all day and all night, using a rotary saw to cut sheets of metal, which was extremely loud. They further alleged that bright lights from trucks at CAD's business shone directly into their bedroom window through the night. The Markersons claimed to have recorded twenty-five instances of the disruptive activities from November 2014 to April 2015.
Mr. Markerson alleged he had advised the City that CAD was in violation of the zoning ordinance, claiming the noise to be a nuisance, and formally requested that the City investigate and rectify the situation. The City subsequently took sound measurements on the disputed property. On January 9, 2015, Clay Stafford, clerk for the City, informed Mr. Markerson that CAD was made aware of the Markersons' complaints and that CAD explained the noise was due to renovations that were being made on the property. Mr. Stafford further explained that CAD assured the City that the renovations had been completed, and upon the City's measuring the sound levels on the disputed property, the noise "barely registered." The Markersons claimed the City took no further action to enforce the zoning restriction.
On June 8, 2015, the Markersons filed a petition for injunction and damages, or, in the alternative, for a writ of mandamus. The Markersons made the aforementioned allegations and further alleged that the activities of 2Long and CAD constituted a nuisance, causing a permanent diminution of their value and enjoyment of their property. The Markersons petitioned the trial court to enjoin 2Long and CAD from further conducting its business of fabricating ACM at the disputed property and to award damages for nuisance. In the alternative, the Markersons petitioned for a writ of mandamus against the City and its mayor to enforce its zoning ordinances with respect to the disputed property.
On October 5, 2015, the Markersons filed a supplemental and amending petition for damages against 2Long and CAD, in which they claimed both parties had violated the Louisiana Unfair Trade Practices and Consumer Protection Law (LUTPA), La. R.S. 51:1401, et seq. Specifically, the *1070 Markersons claimed that 2Long "knowingly purchased a B-l zoned property with the intention of leasing the property to [CAD], and knew or should have known that [CAD]'s business operations violated the zoning ordinances." As to CAD, the Markersons claimed "[CAD] misrepresented the extent of its business operations by representing to [the City] that the loud rotary saw used in its fabrication business was only used temporarily during renovations, when in fact the loud saw was and continues to be used to fabricate products." Pursuant to La. R.S. 51:1409(A), the Markersons prayed for attorney fees.
On November 12, 2015, the Markersons filed a motion for partial summary judgment to permanently enjoin 2Long and CAD from using the disputed property in violation of the zoning ordinance. In a judgment and order signed January 20, 2016, the trial court granted the partial summary judgment, finding CAD to be in violation of the City's zoning ordinance and enjoining 2Long and CAD from conducting business on the disputed property in violation of the zoning ordinance.[2] The trial court further issued a writ of mandamus against the City to enforce the zoning ordinance on the disputed property.
In a motion to set status conference and trial date filed on March 24, 2016, the Markersons claimed that despite the partial summary judgment, injunction, and writ of mandamus, 2Long and CAD continued to violate the City's zoning ordinance in contravention of the trial court's order with the same activities of loud noise and bright lights both day and night, including weekends. After a bench trial, the trial court signed a judgment on May 10, 2017, finding 2Long and CAD liable in solido to the Markersons for nuisance violations, violations of the trial court's injunction order, and pursuant to LUTPA. Chris and Amy Markerson were each awarded $20,000.00 in damages for the nuisance violations and violation of the injunction, with interest and costs. Pursuant to LUTPA, the trial court awarded to Chris Markerson $1,049.99 in costs for surveillance fees and also awarded reasonable attorney's fees to the Markersons, which were to be determined by a subsequent show cause hearing.[3] Both 2Long and CAD have appealed.
Subsequent to the appeal, 2Long filed a peremptory exception of prescription with this Court, claiming that the Markersons's supplemental and amending petition for injunction and damages, which raised LUTPA as a cause of action, was prescribed on its face pursuant to La. R.S. 51:1409.
ASSIGNMENTS OF ERROR
2Long has cited the following assignments of error:
1. The trial court committed manifest error in finding the Markersons's claims fall under the protection of LUTPA as set forth in La. R.S. 51:1409.
2. The trial court committed manifest error in determining the actions of 2Long and CAD were a violation of LUTPA under La. R.S. 51:1401, et seq.
3. The trial court's finding of an ascertainable loss of money by the *1071 Markersons as required under La. R.S. 51:1409 was manifest error.
4. The trial court committed manifest error in its evidentiary rulings by:
A. Considering evidence not introduced into the record at trial.
B. Accepting the Markersons's exhibit P-21 into evidence when the Markersons failed to lay a foundation and authenticate each video included on the exhibit.
C. Accepting Exhibit P-22 into evidence as a summary when the underlying materials were not so voluminous they could not be conveniently examined in court and by not requiring the evidence being summarized to be admitted.
D. Striking the police officers listed as witnesses by 2Long in the pretrial order.
5. The trial court committed manifest error in finding that the fabrication operations of CAD were a nuisance under La. C.C. art. 667.
6. The trial court's award of $20,000.00 to each plaintiff for loss of use and enjoyment of property, stress and anxiety as a result of the nuisance violations was manifest error.
7. The trial court committed legal error by expanding the pleadings to render a judgment of contempt against 2Long.
8. The trial court committed manifest error in holding 2Long and CAD solidarily liable under La. C.C. art. 2324.
9. The trial court committed legal error by failing to apportion fault to 2Long and CAD as required by La. C.C. art. 2323.
10. The trial court's award of attorney fees to the Markersons was manifestly erroneous and legal error.
CAD has cited the following assignments of error:
1. The trial court committed legal error in determining the actions in finding Chris Markerson was entitled to damages and attorney fees pursuant to LUTPA.
2. The trial court erred in finding Chris Markerson sustained an ascertainable loss of money as a result of the alleged unfair trade practices as required under La. R.S. 51:1409.
3. The trial court erred in finding that CAD's business operations constituted a nuisance under La. C.C. art. 667.
4. The trial court erred in making an award for mental anguish when there was no actual damage to property or evidence of psychic trauma, and further erred by making said award excessive.
5. The trial court erred in finding CAD guilty of contempt when a rule to show cause stating the facts alleged to constitute the contempt has not been filed or served.
PEREMPTORY EXCEPTION OF PRESCRIPTION
Louisiana Code of Civil Procedure article 2163 states:
The appellate court may consider the peremptory exception filed for the first time in that court, if pleaded prior to a submission of the case for a decision, and if proof of the ground of the exception appears in the record.
If the ground for the peremptory exception pleaded in the appellate court is prescription, the plaintiff may demand that the case be remanded to the trial court for trial on the exception.
The instant case went to trial, and the Markersons did not request that the *1072 case be remanded for trial on the exception; rather, the Markersons have contended in their opposition to the exception that their LUTPA action against 2Long has not prescribed because 2Long's actions constituted a continuing tort.[4] Because there is a complete trial record before us and a remand is not demanded by the Markersons, we shall dispose of the exception of prescription.
Ordinarily, the exceptor bears the burden of proof at the trial of the peremptory exception. However, if prescription is evident on the face of the pleadings, the burden shifts to the plaintiff to show the action has not prescribed. Carter v. Haygood, 2004-0646 (La. 1/19/05), 892 So.2d 1261, 1267. According to the Markersons' amended petition, 2Long violated LUTPA when it "knowingly purchased a B-l zoned property with the intention of leasing the property to [CAD], and knew or should have known that [CAD]'s business operations violated the zoning ordinances." In the original petition, the Markersons alleged that 2Long purchased the property on August 28, 2014. Louisiana Revised Statutes 51:1409 provides for a prescriptive period of one year running from the time of the transaction or act that gave rise to the right of action. Since the Markersons filed the LUTPA claims on October 5, 2015, the petition was prescribed on its face.
In their opposition to the exception, the Markersons point to the factual findings of the trial court that 2Long and CAD made a series of misrepresentations, committed nuisance violations, and violated the injunction over an extended period of time that constituted deceptive acts or practices in violation of LUTPA.
Louisiana Revised Statutes 51:1405(A) declares as unlawful trade practices "unfair methods of competition and unfair deceptive acts or practices in the conduct of any trade or commerce." The Markerson's sole LUTPA allegation against 2Long deals with the purchase of the property. At trial, Clay Stafford testified that in the application for CAD's business license, he had a discussion with Mr. Long about whether the business operations would be intrusive to the surrounding neighborhood. Mr. Stafford concluded that the operations were allowable and would not be very intrusive. Mr. Stafford also recalled Mr. Long saying that CAD would be "an unobtrusive business," and that the cutting of sheet metal was never mentioned. Based on these representations by Mr. Long, who acted on behalf of 2Long as a member and co-owner, the City issued a business license to CAD.
We find that the alleged false statements of Mr. Long contributed to CAD's acquisition of a business license to operate its business as late as November 11, 2014. Without speaking to the merits of that argument, we find that a purported "deceptive act" occurred less than one year from the Markersons' filing the amended petition on October 5, 2015, which contained the LUTPA claim against 2Long. Therefore, the LUTPA claim against 2Long has not prescribed, and we deny 2Long's exception of prescription.
STANDARD OF REVIEW
2Long and CAD cite both factual and legal errors by the trial court. This state's appellate review standard, which is constitutionally based and jurisprudentially *1073 driven, is that a court of appeal may not overturn a judgment of a trial court absent an error of law or a factual finding which is manifestly erroneous or clearly wrong. Stobart v. State through Dept, of Transp. and Development, 617 So.2d 880, 882, n.2 (La. 1993) Any legal issues are reviewed using the de novo standard of review, under which the trial court's legal conclusions are not entitled to deference. TCC Contractors, Inc. v. Hospital Service Dist. No. 3 of Parish of Lafourche, 2010-0685 (La. App. 1 Cir. 12/8/10), 52 So.3d 1103, 1108 ; Gordon v. Gordon, 2016-0008 (La. App. 4 Cir. 6/8/16), 195 So.3d 687, 689, writ denied , 2016-1282 (La. 10/28/16), 208 So.3d 886.
DISCUSSION
LUTPA
2Long's first three assignments of error and CAD's first two assignments of error question the court's ruling that they had injured the Markersons through deceptive or unfair trade practices as provided in the Louisiana Unfair Trade Practices Act.
In its reasons for judgment, the trial court stated that "any person who suffers an ascertainable loss of money or property as a result of the use by another of an unfair or deceptive method, act or practice declared unlawful under [ La. R.S. 51:1405 ] may bring an action to recover damages, attorney fees and costs," citing Cheramie Services, Inc. v. Shell Deepwater Production, Inc., 2009-1633 (La. 4/23/10), 35 So.3d 1053, 1056. Traditionally, Louisiana courts have limited causes of action under LUTPA to consumers and business competitors. NOLA 180 v. Treasure Chest Casino, LLC, 2011-0853 (La. App. 5 Cir. 3/27/12), 91 So.3d 446, 449, writ denied, 2012-0949 (La. 6/15/12), 90 So.3d 1066. After Cheramie Services, however, LUTPA has been extended to plaintiffs who did not have any business relationship with the defendants.
In NOLA 180, a charter school sued Treasure Chest Casino under LUTPA after its manager embezzled approximately $667,000.00 to gamble at the casino. While not finding a LUTPA violation on the merits, the Fifth Circuit did find, under Cheramie Services, that the school had a right of action under LUTPA. See NOLA 180, 91 So.3d at 450.
In Harp v. Autrey, 47,749 (La. App. 2 Cir. 8/21/13), 121 So.3d 1260, writ denied, 2013-2263 (La. 12/2/13), 126 So.3d 1286, the Second Circuit found that the holding in Cheramie Services established a LUTPA right of action for a plaintiff property owner against the defendant who refused to provide water services to the plaintiff, as he was obligated to do. Reversing the trial court, the Second Circuit found the defendant was involved in a bad-faith scheme to drive the plaintiff from his property by cutting off the water supply, so that the defendant could then purchase the property for himself. Harp, at 1264, 1265.
Cheramie Services broadens the right of action under LUTPA to any person who has suffered an ascertainable loss through another's deceptive or unfair trade practices, regardless of whether the person is a business consumer or competitor of the defendant. Therefore, the Markersons have a right of action under LUTPA against 2Long and CAD, and now we must determine whether the Markersons have first, suffered an ascertainable loss, and second, whether that loss directly resulted from deceptive or unfair trade practices of 2Long and/or CAD.
Louisiana Revises Statutes 51:1405(A) prohibits any "unfair or deceptive acts or practices in the conduct of trade or commerce." In determining whether a LUTPA violation occurred, courts must decide on a case-by-case basis whether the conduct falls within the statute's prohibition.
*1074 Cheramie Services, 35 So.3d at 1059, citing Dufau v. Creole Engineering, Inc., 465 So.2d 752, 758 (La. App. 5 Cir. 1985), writ denied, 468 So.2d 1207 (La. 1985). A trade practice is unfair when it offends established public policy and when the practice is unethical, oppressive, unscrupulous or substantially injurious. A trade practice is deceptive when it amounts to fraud, deceit, or misrepresentation. Indest-Guidry Ltd. v. Key Office Equipment, Inc., 2008-0599 (La. App. 3 Cir. 11/5/08), 997 So.2d 796, 806, writ denied. 2008-2851 (La. 2/6/09), 999 So.2d 782. The Markersons alleged in their petition that 2Long knowingly purchased the property with actual or constructive knowledge that CAD's operations were in violation of the zoning ordinance, and that CAD misrepresented its operations to the City by saying the loud noise was due to renovations, when it was actually a continuous noise from its daily operations. On its face, the petition alleges unfair or deceptive trade practices.
The trial court found 2Long and CAD had violated LUTPA and awarded $1,049.99 in costs for surveillance fees to the Markersons. The award is based on an invoice introduced by the Markersons showing the purchase of equipment for that amount. The invoice does not adequately describe the equipment, but Mr. Markerson testified he purchased a security camera system after the injunction was ordered to show that CAD's operations continued at night.
A summary of the recordings prepared by Mr. Markerson was admitted into evidence, over objection. The summary contains descriptions of each recording or photograph and the date and time on which they were taken. Most of the videos are described as being taken with Mr. Markerson's iPhone, while only two videos were taken by the security camera. The photographs were taken with Mr. Markerson's Canon SLR camera. All iPhone and Canon footage is in color, the images are high quality, and in most of the videos the saw can be clearly heard. The iPhone recordings were taken both during the day and at night. In contrast, the security camera footage is in black and white, the images are of a slightly lesser quality, and there is no sound.
The sole purpose of the security camera footage was to prove the violation of the injunction; however, that footage only shows a truck pulling into a parking lot with its headlights remaining on and pointing toward the camera's location from the Markersons' backyard. No sound can be heard. Several of the videos taken with the iPhone are dated after the injunction was ordered, which makes the security camera footage unnecessary to prove any of the Markersons' claims. The security camera system that the Markerson's chose to buy was used as a discovery tool, and therefore not an ascertainable loss. We find that the trial court committed manifest error in awarding the cost under LUTPA of the security camera, and, as no ascertainable loss has been proven, there can be no violation under LUTPA. In so finding, the Markersons are not entitled to attorney's fees, and we pretermit discussion on 2Long's tenth assignment of error.
Evidentiary Rulings
In its brief, 2Long states that no evidence of unfair methods of competition and/or unfair deceptive acts or practices in the conduct of any trade or commerce pursuant to La. R.S. 51:1405 were presented by the Markersons at trial. Since we have found that the Markersons did not suffer an ascertainable loss under LUTPA, we pretermit discussion of part (A) of 2Long's fourth assignment of error.
Parts (B) and (C) of 2Long's fourth assignment of error concern the Markersons' exhibits P-21 and P-22, respectively. P-21 is the flash drive on which Mr. Markerson *1075 saved all of his photographs and video recordings, and P-22 is a summary of those photographs and videos compiled by Mr. Markerson. P-22 is divided into P-22A, which contains the date, time, and description of each file saved on the flash drive, and P-22B, which contains the dates of all the videos taken, most of which were not saved on the flash drive.
As P-21 was being filed and introduced into evidence, the defendants objected; however, just before the defendants raised the objection, the evidence was received by the court, as reflected in both the transcript and the court minutes. The objection regarded a lack of foundation for the photographs and videos. Counsel for the Markersons expressed her intent to show each photograph and video in order to lay a foundation, and the court allowed her to proceed. Each video was played before the court, and Mr. Markerson gave an explanation as to each one.
The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims. La. C.E. art. 901(A). Such evidence may come in the form of testimony by a witness with knowledge that the matter is what it is asserted to be. La. C.E. 901(B)(1) ; State v. Rice, 2017-0446 (La. 6/29/17), 222 So.3d 32, 33 (per curiam ).
With each video and photograph, Mr. Markerson explained to the court the date and time he recorded it, the method in which he recorded it, and what the images depicted. He further explained that while each video was only several seconds long, the noise from the saw, which can be heard in the videos, lasted for several hours. He also explained that the surveillance videos had no sound. The trial court found, as we find, that the videos and photographs depict what Mr. Markerson claimed. See Rice, at 33-34.
Generally, the trial court is granted broad discretion on its evidentiary rulings and its determinations will not be disturbed on appeal absent a clear abuse of discretion. Henry v. Sullivan, 2016-0564 (La. App. 1 Cir. 7/12/17), 223 So.3d 1263, 1274. 2Long contends the trial court abused its discretion when it failed to definitively admit the evidence after the foundation had been laid. We disagree. Prior to the laying of the foundation, the trial court clearly received the evidence into the record. After the foundations for each video and photograph were completed, the trial continued. Had the trial court felt that no proper foundation had been given as to any piece of evidence, it would have refused to admit the evidence at that time. Since the court made a general acceptance of P-21 at its introduction and made no subsequent modification to that ruling, we find that the trial court had intended to admit the entirety of P-21 after the foundation had been laid.
The admission of P-22 as evidence was largely unnecessary since Mr. Markerson was present to identify each file in P-21 himself. Since the material on P-21 was not so voluminous that they required a summary, we pretermit discussion on the admissibility of this evidence. See La. C.E. art. 1006.
In the final part of its fourth assignment of error, 2Long avers that the trial court improperly excluded the testimony of eight police officers it intended to call as witnesses. In a bench trial order dated May 4, 2016, the trial court initially scheduled the trial for September 30, 2016, and set a deadline for listing new witnesses at sixty days prior to trial. The bench trial began December 1, 2016. The pre-trial order, filed the same day, listed eight officers from the Gonzales Police Department as witnesses for 2Long and CAD. The Markersons filed opposition to *1076 the inclusion of these witnesses on the same date. Although CAD makes reference to the Gonzales Police Department in its answer to the original petition, it failed to list the eight individual officers prior to the deadline for listing new witnesses, which would have been October 1, 2016.
The theory inherent in pre-trial civil procedure is to avoid surprise and to permit an orderly disposition of the case. Robertson v. Lafayette Ins. Co., 2011-0975 (La. App. 4 Cir. 2/8/12), 85 So.3d 186, 189, citing Eanes v. McKnight, 262 La. 915, 931-32, 265 So.2d 220, 226-27 (La. 1972). The trial court may order parties to produce an identification of witnesses, documents and exhibits, pursuant to La. C.C.P. art. 1551(A)(8). Furthermore, in the event that a party disobeys the trial court's pretrial order, the trial court may make such orders that are just, including the striking of witnesses or other evidence. La. C.C.P. art. 1471(A)(2).
After a brief hearing before the trial on December 1, 2016, the court ordered that the testimony of the eight officers be stricken, pursuant to the Markersons' objection. Since the Markersons were not made aware of the eight witnesses until the day of the trial, we cannot say that the trial court abused its discretion by striking the eight police officers from the witness list. See Robertson , at 190.
Nuisance and Violation of Injunction
2Long's assignments of error five through seven and CAD's remaining assignments of error center around the trial court's award to each plaintiff of $20,000.00 for nuisance violations and violations of the trial court's injunction.
Louisiana Civil Code article 667 states, in pertinent part:
Although a proprietor may do with his estate whatever he pleases, still he cannot make any work on it, which may deprive his neighbor of the liberty of enjoying his own, or which may be the cause of any damage to him. However, if the work he makes on his estate deprives his neighbor of enjoyment or causes damage to him, he is answerable for damages only upon a showing that he knew or, in the exercise of reasonable care, should have known that his works would cause damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care.
Whether an activity constitutes a nuisance is a question of fact dependent upon the circumstances of each particular case. Schulker v. Roberson, 91-1228 (La. App. 3 Cir. 6/5/96), 676 So.2d 684, 688. One claiming damages arising out of a condition constituting a nuisance has the burden of proving that the condition constitutes a nuisance and that damages resulted therefrom. Butler v. Baber , 529 So.2d 374, 379 (La. 1988). As stated, the Markersons presented testimony and visual evidence of CAD's activities adjacent to their property. The evidence presented to the trial court illustrated that from a documented period of November 2014 to October 2016, CAD's operations produced continuous noise day and night, and at night trucks pulling into CAD's loading dock would shine their headlights in the direction of the Markersons' home, waking them up. We do not find that the trial court's conclusion that CAD's operations constituted a nuisance was manifestly erroneous; furthermore, we cannot substitute our own opinion for the trial court's without a finding of manifest error. See Lasyone v. Kansas City Southern R.R., 2000-2628 (La. 4/3/01), 786 So.2d 682, 698.
In addition to proving the existence of the nuisance, the Markersons also had to prove damage resulting from the nuisance. In the original petition, the Markersons alleged loss of enjoyment of their property, discomfort, annoyance, diminishment of *1077 property value, inconvenience, mental stress, pain and suffering, and inability to sleep, entertain, or take solace in their residence. Mr. Markerson testified as to landscaping work he had done to his backyard, including an irrigation system and generator, which he claimed totaled approximately $2,000.00. He had started the landscaping project in the summer of 2014.
In addition to the cost of the landscaping, Mr. Markerson testified that since CAD started its operations in November of 2014, the noises, especially the metal saw noise, was an aggravation that could be heard both inside and outside the home. In a letter to the mayor of Gonzales, Mr. Markerson stated neither he or his wife were able to enjoy their property because of the daily noise. He further testified that had he known he would have to live next to the noise coming from CAD's workshop, he would not have bought the property.
In addition to Mr. Markerson's testimony, Amy Markerson testified that she and her husband purchased their property with the intent of expanding their family, installing a pool, and enjoying a quiet neighborhood, with the backyard being the most important feature to the home. Prior to the beginning of CAD's operations, the Markersons would use the backyard on a daily basis and entertain guests in the yard. Ms. Markerson discovered that she was pregnant in early 2015, and she testified that while undergoing the stress of the noise from CAD, the lack of sleep from trucks' headlights shining into their bedroom, and stress from her job as an occupational therapist, she suffered a miscarriage in March of 2015. Ms. Markerson testified that all the noises coming from CAD, but especially the saw noise, were a constant mental distraction. Due to the noise, the Markersons lost almost all use of their backyard. Ms. Markerson also testified that on occasion, workers from CAD would approach the fence and look into the backyard, which scared her.
In determining whether an activity or work occasions real damage or mere inconvenience, a court is required to determine the reasonableness of the conduct in light of the circumstances. The analysis requires consideration of factors such as the character of the neighborhood, the degree of intrusion and the effect of the activity on the health and safety of the neighbors. Badke v. USA Speedway, LLC, 49,060 (La. App. 2 Cir. 5/14/14), 139 So.3d 1117, 1126, writ denied, 2014-1533 (La. 10/24/14), 151 So.3d 606. The evidence and testimony presented by the Markersons show that for almost one year they suffered stress, loss of enjoyment of their home and backyard, and pecuniary loss due to the activities at CAD's business.
The trial court awarded $20,000.00 to each of the Markersons for damages they sustained due to the activities of CAD. The trial court was not manifestly erroneous in the amount of the award for the kind of damage sustained. See Jones v. Capitol Enterprises, Inc., 2011-0956 (La. App. 4 Cir. 5/9/12), 89 So.3d 474, 509-510, writ denied, 2012-1634 (La. 10/26/12), 99 So.3d 651. Since we find the trial court's award is justified solely on the nuisance violations, it is unnecessary to discuss whether the trial court improperly expanded the pleadings to find 2Long and CAD in contempt.
Solidary Liability and Comparative Fault
Louisiana Civil Code article 2324(A) states that "he who conspires with another to commit an intentional or willful act is answerable, in solido, with that person, for the damage caused by such act." 2Long asserts in its eighth assignment of error that no evidence was introduced to establish solidary liability between 2Long and CAD. Insofar as it relates to the nuisance violations, we disagree. The record is clear that without 2Long's application *1078 to the City for a business license on behalf of CAD, and without 2Long leasing its property to CAD, CAD never could have operated its business next to the Markersons' property.
The actionable element in a claim for solidary liability for conspiracy is not the conspiracy itself, but rather the tort which the conspirators agreed to perpetrate and which they actually commit in whole or in part. Boudreaux v. Jeff, 2003-1932 (La. App. 1 Cir. 9/17/04), 884 So.2d 665, 672. Although CAD created the noise and had headlights from trucks shining into the Markersons' bedroom at night, 2Long enabled and facilitated those actions to occur. We find the trial court was not manifestly erroneous in holding 2Long and CAD liable to the Markersons in solido for the nuisance violations.
2Long's ninth assignment of error avers that the trial court made no determination as to comparative fault of the parties pursuant to La. C.C. art. 2323. As stated above, 2Long and CAD are solidary liable, meaning the debt owed is not divided, and each are obligated for the whole, as if it were alone. See Kelley v. General Ins. Co. of America, 2014-0180 (La. App. 1 Cir. 12/23/14), 168 So.3d 528, 535-36, writs denied, 2015-0157, 20150165 (La. 4/10/15), 163 So.3d 814, 816. In finding the defendants solidarily liable, the trial court did not have to make a determination of comparative fault.
DECREE
The peremptory exception of prescription filed before this Court by the appellant 2Long, LLC, is denied. The judgment of the Twenty-Third Judicial District Court, with respect to the Louisiana Unfair Trade Practices Act claim, is reversed. In all other respects, the judgment is affirmed. Costs of this appeal shall be assessed equally between the appellants, Composite Architectural Design Systems, LLC and 2Long, LLC, and the appellees, Chris and Amy Markerson.
PEREMPTORY EXCEPTION DENIED; JUDGMENT AFFIRMED IN PART, AND REVERSED IN PART.
Welch J. agrees in part and dissents in part and assigns reasons.
McClendon J. Concur for reasons as signed.
I concur in the result reached by the majority.
I agree with the majority opinion except with respect to the issue of solidary liability. Based on my review of the record, I find that the trial court manifestly erred in holding 2Long, LLC and CAD solidarily liable to the Markersons. The evidence in the record does not support a finding that 2Long, LLC conspired with CAD to create a nuisance. Therefore, I would reverse that portion of the judgment of the trial court and remand for the allocation of fault, if any of 2Long, LLC pursuant to La. C.C. art. 2323.
Thus, I respectfully dissent in part.

Gonzales City Ordinance 22-10(b)(l), as of August 25, 2015, outlined permitted uses of a "B-1 limited business district" as "office buildings, provided that no goods, wares or merchandise shall be prepared or sold on the premises; personal service shops such as beauty shops and barber shops; single-family residential detached conventional homes."

The partial summary judgment was not appealed.

The award of attorney's fees in the amount of $90,823.00 was appealed by 2Long and CAD and is the sole issue in Chris Markerson, Jr. and Amy Markerson v. Composite Architectural Design Systems, LLC and 2Long, LLC, 2018-CA-0028 (La. App. 1 Cir. 10/07/2018), 255 So.3d 1222, 2018 WL 3372626.

See Martin v. City of Baton Rouge, 2000-0896 (La. App. 1 Cir. 6/22/01), 858 So.2d 440, 442, where this Court remanded the matter to the trial court and held the appeal in abeyance solely for consideration of a peremptory exception of prescription where the plaintiff had made demand for a rehearing pursuant to La. C.C.P. 2163 after the defendants had filed the exception for the first time with this Court.