Judgment rendered January 14, 2026.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 56,654-CA
No. 56,655-CA
(Consolidated Cases)

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

No. 56,654-CA

JESSE JUSTIN COLVIN AND
RUBY SUE HILL COLVIN
            Plaintiffs-Appellants

versus

ROBERT BRADFORD JONES
AND RONI MICHELLE
REPPOND JONES
            Defendants-Appellees

No. 56,655-CA

ROBERT BRADFORD JONES
AND HIS WIFE, RONI
MICHELLE REPPOND JONES
            Plaintiffs-Appellees

versus

JESSIE JUSTIN COLVIN AND
HIS WIFE, RUBY SUE HILL
COLVIN
            Defendants-Appellants

* * * * *

Appealed from the
Third Judicial District Court for the
Parish of Union, Louisiana
Trial Court Nos. 50,974 and 50,978

Honorable Monique Babin Clement, Judge

* * * * *

DURRETT LAW OFFICES, LLC                    Counsel for Appellants
By: NiKayla Leann Willaert


LAW OFFICE OF MICHAEL S. COYLE             Counsel for Appellees
By: Michael Stephen Coyle


* * * * *

Before HUNTER, MARCOTTE, and ELLENDER, JJ.

**HUNTER, J.**

Plaintiffs, Jesse Justin Colvin and Ruby Sue Hill Colvin, appeal a district court ruling establishing the "old downed fence" as the boundary between the properties and issuing a permanent injunction in favor of Robert Bradford Jones and Roni Michelle Reppond Jones, including damages in the amount of $7,500.00 to each of the Joneses. For the following reasons, we affirm the judgment of the trial court.

## FACTS

On July 12, 2012, Jesse and Ruby Colvin (collectively, the "Colvins") purchased an immovable property in Union Parish, twenty-three acres located at 2479 Highway 828, Farmerville, LA ("Colvin Property"), where they established their primary residence. Two years later, on or about March 25, 2014, Robert and Roni Jones (collectively, the "Joneses") purchased a one-acre tract of immovable property located at 3227 Linville Fire Tower Road, Farmerville, LA ("Jones Property"), where they established their primary residence. The parties became friends and good neighbors for over a decade until the boundary line became a matter in dispute.

The Colvins asserted the property in dispute is a seventy-foot deep timber and undergrowth strip of land between two properties, and such strip is entirely within their northern border. Additionally, the Colvins asserted the correct north boundary of the property line is shown in both the "1989" and "2012" surveys. However, the Joneses contended the boundary between the two properties is the "combination fence" or "old wire fence," which is located south of the property. The Joneses expressed verbal ownership of the disputed property by instructing the Colvins on how to use the boundary. In response, the Colvins placed "NO TRESPASSING" signs

along the surveyed property. When the Joneses continued to assert verbal ownership over the disputed property, the Colvins erected larger "NO TRESPASSING" signs and placed them along the surveyed property line.

On September 8, 2023, the Colvins filed suit against the Joneses to judicially fix the boundary between the parties. Thereafter, the Joneses filed for both permanent injunction and damages alleging that the Colvins deprived them of their enjoyment of their property by placing large harassing signs facing their property; placing a dead cow by the survey line; installing orange construction fencing near the boundary; using high-intensity lights to shine onto their property, including their backyard; and operating loud power generators during dusk to dawn hours.

Following a bench trial, the district court concluded that the north boundary of the Colvin tract and the south boundary of the Jones tract are judicially fixed at the old combination fence. The court granted the permanent injunction against the Colvins, ordering them to remove all signs, posts, lights, and other flagging materials, and found Jesse Colvin liable to the Joneses for damages in the amount of $7,500 each.

## DISCUSSION

### Assignment Error 1: Boundary Dispute

The Colvins contend the district court erred by fixing the boundary at the old, downed fence, issuing a permanent injunction against them, and awarding the Joneses $7,500 in damages. More specifically, the Colvins argue that the Joneses could not bring a possessory action because they were allegedly dispossessed in April 2022 when wooden stakes were placed on the property. The Colvins further contend that the Joneses bore the burden of proving the extent of their possession and, having failed to prove acquisitive

2

prescription, the boundary should instead be determined according to title. Thus, the trial court erred by fixing the boundary at the "old downed fence."

Three real actions to determine ownership or possession of immovable property are the possessory action, the petitory action, and the boundary action. A boundary action is a real action under the Code of Civil Procedure that is distinct from a possessory and a petitory action. *Hooper v. Hero Lands Co.*, 15-0929 (La. App. 4 Cir. 3/30/16), 216 So. 3d 965, *writ denied*, 16-0971 (La. 9/16/16), 206 So. 3d 205. In this matter, the trial court was not presented with a possessory action but a boundary action.

Under La. C.C. art. 784, "A boundary is the line of separation between contiguous lands. A boundary marker is a natural or artificial object that marks on the ground the line of separation of contiguous lands." Article 785 of the Louisiana Civil Code provides: "The fixing of the boundary may involve the determination of the line of separation between contiguous lands, if it is uncertain or disputed; it may also involve the placement of markers on the ground, if the markers were never placed, were wrongly placed, or no longer to be seen." Article 786 of the Louisiana Civil Code provides: "The boundary may be fixed upon the demand of an owner or of one who possesses as owner."

The court shall determine the boundary based on the parties' ownership. Pursuant to La. C.C. art. 786, if neither party proves ownership, the boundary shall be fixed according to the limits established by possession. According to La. C.C. art. 531, one claiming ownership of an immovable against another who has had the immovable for one year after commencing possession in good faith and with just title, or who has had the immovable for ten years, shall prove that he has acquired ownership from a previous

3

owner or by acquisitive prescription. When the parties trace their titles to a common author, preference shall be given to the more ancient title. La. C.C. art. 793. When a party proves acquisitive prescription, the boundary shall be fixed according to the limits established by prescription rather than titles. Additionally, boundary location is a question of fact, and the determination of its location by the trial court should not be reversed absent manifest error. *Bowman v. Blankenship*, 34,558 (La. App. 2 Cir. 4/4/01), 785 So.2d 134, *writ denied*, 01-1354 (La. 6/22/01), 794 So. 2d 794. The party claiming acquisitive prescription bears the burden of proof. La. C.C. art. 794; *Fabre v. Manton*, 21-1418 (La. App. 1 Cir. 6/28/22), 343 So. 3d 821.

If a party and his ancestors in title possessed for 30 years without interruption, within visible bounds, more land than their title called for, the boundary shall be fixed along these bounds. La. C.C. art. 794. After considering the evidence, including the testimony and exhibits of a surveyor or the other expert appointed by the court or by a party, the court shall render judgment fixing the boundary between the contiguous lands in accordance with the ownership or possession of the parties. La. C.C.P. art. 3693.

In a boundary action or claim for acquisitive prescription, the boundary's location is a question of fact to be determined by the trier of fact, and such determination should not be reversed on appeal in absence of manifest error. *Horaist v. Pratt*, 21-00166 (La. 3/23/21), 312 So. 3d 1093; *Cumpton v. Dragon Ests., LLC*, 55,784 (La. App. 2 Cir. 8/21/24), 399 So. 3d 676.

In *Marcello v. Jo-Blanche Corp.,* 2020-1113 (La. App. 1 Cir. 6/4/21), 330 So. 3d 632, *writ denied*, 21-01666 (La. 1/19/22), 331 So. 3d 330, the

4

plaintiffs filed a boundary action concerning a drainage ditch that did not run in a straight line along the property line. They argued that the boundary should be fixed by acquisitive prescription on the down-the-bayou side of the ditch, relying on title records and a 2020 Templeton survey, which is consistent with a 1973 McGee survey. The defendant contended the boundary should instead follow the up-the-bayou side of the ditch according to a survey referenced in the defendant's title. The trial court fixed the boundary in accordance with the 2020 Templeton survey. On appeal, the court held that the plaintiffs, as the parties claiming acquisitive prescription, bore the burden of proving ownership through a previous owner or by actual possession. Finding no manifest error in the trial court's evaluation of the evidence, the appellate court affirmed the boundary as established in the 2020 Templeton survey.

In *Hebert v. Superior Rental Props., LLC*, 23-1015 (La. App. 1 Cir. 9/25/24), 405 So. 3d 704, the plaintiffs, co-owners of undivided interests in the property, sought to fix the boundary and obtain a permanent injunction, presenting extensive testimony and exhibits, while the defendants offered expert survey testimony and numerous documents and maps. The trial court reviewed the property's history dating back to 1807 and concluded that the boundary could not be fixed by title because both parties' titles were equally ancient and defective. Relying on La. C.C. art. 792, the court instead resolved the issue through acquisitive prescription and found that the plaintiffs had continuously, publicly, and peaceably possessed the land for more than thirty years. It accordingly set the boundary line, relying in part on the defendants' own survey, and granted a permanent injunction preventing defendants from making substantial alterations. On appeal, the

5

court affirmed, finding no manifest error in the trial court's reliance on acquisitive prescription or in its placement of the boundary line.

In the instant case, Jerry L. Rugg completed the first survey of the Colvin property on July 20, 1989 (the "1989 Survey"); James Michael Duty completed the second survey on May 16, 2012 (the "2012 Survey"), which labeled the "old wire fence (down)" south of the northern boundary of the Colvin property. The boundary separating the Colvin Property from the Joneses' property has never been formally established; however, three surveys of the Colvin property have been completed. Delta Land Surveying ("DLS") conducted the most recent survey, during which wooden stakes were placed along the boundary at issue.

At trial, multiple witnesses testified about the disputed boundary between the Jones and Colvin properties, using old surveys and remnants of an aged "combination fence," which suggested a longstanding but unclear dividing line. During his testimony, Jesse Colvin ("Jesse") stated the Jones Property was vacant when he purchased the Colvin Property. He testified there were remnants of an old fence near the northern boundary of his property and the southern boundary of the Jones Property. Jesse acknowledged that the survey conducted in 2012 referenced the "old fence line." Further, he stated that he had the property surveyed in 2022 because he did not know the location of his property line. According to Jesse, the steel posts placed on the property by his grandchildren were placed in accordance with the 2022 survey. Jesse admitted that prior to the boundary dispute, he had never visited the northern boundary of the property (the disputed area), and he had never kept livestock or cut trees in that area. He stated he relied on his grandchildren to re-stake survey markers.

6

Jim Gandy, a previous owner of the Colvin property, testified he purchased the property in 1989, and he had the property surveyed because he wanted to build a pond. According to Gandy, he left a buffer of trees on the northern property line for privacy reasons.

James Michael Duty, a professional land surveyor, testified he prepared a "retracement" of a downed fence on the property in 2012. He stated the location of the downed combination fence in his survey was the same as the one noted in the survey later conducted by Jerry Rugg. Duty opined that the property "line of record" was north of the old fence shown on the surveys, and property lines set forth in the 2012 survey matched the public record.

Stacy Albritton testified he co-owned the property to the east of the Jones Property. He stated the fence between the Colvin and Jones properties is located along the pasture line south of the tree line. He also stated the fence had been in the same location since his father purchased the property. Albritton admitted that he hunted and walked along the property line.

Robert Bradford Jones ("Brad") testified that he believed the old fence was the boundary when he purchased the property, and he used the disputed area for hunting. He admitted that he did not have a survey conducted, and he did not know the exact property lines to the east or west of the property. Nonetheless, he testified that Linville Fire Tower Road was the north property line, and the old fence line was the south property line because the property was already cleared to the south of it when he purchased it. Brad also stated he had never seen Jesse in that location prior to 2023. According to Brad, after tensions escalated in early 2023, Jesse began posting numerous "no trespassing" signs; moved a dead cow near the line; erected large

insulting signs; and installed loud, bright lighting, which the Joneses argued created a nuisance.

After considering the testimony and evidence, the trial court found that title evidence could not resolve the disputed line and that the "old downed fence" represented the limits established by possession. The court also found Jesse's actions were intentional; caused the Joneses fear, anxiety, and loss of enjoyment of their backyard; and were unsupported by any evidence that Brad had threatened or trespassed on the Colvin property. Because this finding is factual and supported by the record, we cannot say the trial court manifestly erred in fixing the boundary at the "old downed fence." As such, this assignment lacks merit.

***Assignment Error 2: Permanent Injunction***

In the second assignment of error, the Colvins argue that the trial court erred when it issued a mandatory injunction ordering them to remove all signs, posts, lights, and flagging materials and enjoined them from placing any similar materials at the exact location. Although the Joneses asserted the works constructed by the Colvins constituted a nuisance and served no purpose other than to intimidate them and cause damage their health, the Colvins claim the Joneses failed to present evidence of any damages in the form of depreciation of land values, structural damage to the immovable property, or injuries to persons pursuant to La. C.C. art. 667.

Pursuant to La. C.C.P. art. 3601, "[a]n injunction shall be issued in cases where irreparable injury, loss, or damage may otherwise result to the applicant[.]" *Succession of Smith v. Portie*, 2019-183 (La. App. 3 Cir. 12/30/19), 289 So. 3d 77, 80.

La. C.C. art. 667 states:

> Although a proprietor may do with his estate whatever he pleases, still, he cannot make any work on it, which may deprive his neighbor of the liberty of enjoying his own, or which may be the cause of any damage to him. However, if the work he makes on his estate deprives his neighbor of enjoyment or causes damage to him, he is answerable for damages only upon a showing that he knew or, in the exercise of reasonable care, should have known that his works would cause damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care[.]

La. C.C. art. 668 states:

> Although one is not at liberty to make any work by which his neighbor's buildings may be damaged, yet everyone has the liberty of doing on his own ground whatsoever he pleases, although it should occasion some inconvenience to his neighbor.

> Thus, he who is not subject to any servitude originating from a particular agreement in that respect may raise his house as high as he pleases, although by such elevation he should darken the lights of his neighbor's house, because this act occasions only an inconvenience, but not a real damage.

*See also*, *Taylor v. Denka Performance Elastomer LLC*, 332 F. Supp. 3d 1039, 1054 (E.D. La. 2018).

If there is a substantial interference with the rights of a plaintiff to the peaceful use of his premises and to such rest and quiet as may be expected in such a neighborhood, and if the interference is not temporary but obviously will continue unless prevented by judicial process, a right to injunctive relief exists. *Fos v. Thomassie*, 26 So. 2d 402 (La. App. Orl. 1946). *See also*, *Diefenthal v. Longue Vue Mgmt. Corp.*, 561 So. 2d 44 (La. 1990). Since plaintiffs seek injunctive relief, they must prove irreparable injury in addition to the necessary showing of real damage under C.C. 667–669. C.C.P. 3601; *Salter v. B.W.S. Corp., Inc.,* 290 So. 2d 821 (La.1974); *Hilliard v. Shuff,* 260 La. 384, 256 So. 2d 127 (1972).

In *Rodrigue v. Copeland*, 475 So. 2d 1071 (La. 1985), three residents of a Jefferson Parish subdivision sought injunctive relief to stop the defendants from operating an elaborate annual Christmas display that drew overwhelming crowds into their neighborhood. The trial court granted only limited relief, but on appeal, the court examined factors such as the neighborhood's character, the degree of intrusion, and the impact on residents' health and safety. The evidence showed that the display generated heavy traffic, loud music, bright lights, and significant delays for nearby homeowners despite law-enforcement efforts to reduce disruptions. Considering these impacts, the Louisiana Supreme Court enjoined the defendant from operating a display of such size and extravagance, prohibited oversized illuminated figures, and required that any accompanying sound be reduced so it could not be heard inside the nearest homes.

In *Par. of E. Feliciana ex rel. E. Feliciana Par. Police Jury v. Guidry*, 04-1197 (La. App. 1 Cir. 8/10/05), 923 So. 2d 45, *writ denied,* 05-2288 (La. 3/10/06), 925 So. 2d 515 the parish sought a permanent injunction against a commercial motocross track, alleging its operation violated nuisance and noise ordinances. The trial court found, based on resident testimony and noise readings, that the track substantially interfered with neighboring property enjoyment. On appeal, the court applied La. C.C. arts. 667-669 and concluded that although some inconveniences are expected, the persistent noise reaching up to 85 decibels from morning until night created excessive and intolerable intrusion in the rural area. The appellate court held that the operation caused real damage and affirmed the injunction.

In the present matter, the record states that Jesse's activities consisted of the following:

(1) The installation of orange construction fencing near the boundary at issue.

On April 11, 2023, Jesse installed a series of 8×12 "PRIVATE PROPERTY NO TRESPASS" commercial signs along the full length of the Joneses' property line, claiming he did so because he believed Albritton had threatened his wife.[1] The trial court found no evidence supporting Jesse's claimed justification.

(2) The placement of a dead cow next to the survey line.

On May 4, 2023, Jesse placed one of his dead cows into the wooded area near the Joneses. Jesse testified that he only moved the cow to that location until he found a place to bury it. However, Jesse further testified, not denying having told Brad, "I was fucking with you with the dead cow," a statement he made on the June 19, 2023, recorded call.

(3) The placement of large harassing and "posted" signs facing the Joneses' property.

On May 20, 2023, Jesse erected three large signs each four feet by sixteen feet and mounted on eight-foot poles just ten feet from the northern boundary line facing the Joneses' property. Two fluorescent orange signs displayed "NO TRESPASSING FROM NEIGHBORS" with poop-emoji symbols meant to depict the Joneses as "shitty neighbors," while a third sign announced "J-ONE HOG FARM Coming Soon." Jesse claimed the signs were prompted by a "nasty letter" from Brad dated April 14, 2023. The trial court reviewed the letter and found it simply requested a truce between the parties.

(4) The shining of high-intensity lights onto the Jones property, including into their backyard, and the operation of loud power generators during the dusk hours.

On May 23, 2023, Jesse installed lights to illuminate the signs, powering them with a generator that Brad testified caused his whole house to vibrate. Jesse admitted he illuminated the signs specifically to send a message to Brad to leave him alone.

The trial court also found that Jesse's conduct, including erecting harassing signs; placing a dead cow near the boundary; installing construction fencing; and directing high-intensity lights and generator noise toward the Joneses, was intentional, served no legitimate purpose, and

---

[1] Stacy Albritton testified on behalf of the Joneses and co-owns the property east of the Jones property. Jesse alleges Brad sent Albritton to his house to threaten his wife, Ruby; however, he did not present any evidence to substantiate the claim.

substantially interfered with the Joneses' quiet enjoyment of their property. These actions constituted real damage and created irreparable injury sufficient to justify injunctive relief under La. C.C.P. art. 3601 and La. C.C. arts. 667-668. We find no manifest error regarding the court's ruling.

### *Assignment of Error 3: Damages*

In the final assignment of error, the Colvins argue that the Joneses' alleged harms were mere inconveniences. They contend the Joneses suffered no physical or property damage, were not prevented from using their yard, and presented no medical proof of mental distress or financial loss. The Colvins also argue they are entitled to an award of monetary damages "in an amount to be determined either by this Court or by the trial court."

In all civil cases, the appropriate standard for appellate review of factual determinations is the manifest error standard. *Hayes Fund for First United Methodist Church of Welsh, LLC v. Kerr-McGee Rocky Mountain, LLC*, 14-2592 (La. 12/8/15), 193 So. 3d 1110; see also *Detraz v. Lee*, 05-1263, 950 So. 2d 557 (La. 1/17/07). To determine whether an activity or work occasions real damage or mere inconvenience, a court is required to assess the reasonableness of the conduct in light of the circumstances, which analysis involves consideration of factors such as the character of the neighborhood; the degree of the intrusion; and the effect of the activity on the health and safety of the neighbors. *Markerson v. Composite Architectural Design Sys., LLC*, 17-1252 (La. App. 1 Cir. 7/10/18) 255 So. 3d 1065.

One claiming damages arising out of a condition constituting a nuisance has the burden of proving that the condition constitutes a nuisance and that damages resulted therefrom. *Butler v. Baber*, 529 So. 2d 374 (La.

12

1988). A landowner is responsible for damages to an aggrieved neighbor upon a showing that: (1) he knew or, in the exercise of reasonable care, should have known that his works would cause damage; (2) that the damage could have been prevented by reasonable care; and (3) that he failed to exercise such reasonable care. *Perniciaro v. Hamed*, 20-62 (La. App. 5 Cir. 12/16/20), 309 So. 3d 813. The frequent disruption of the plaintiffs' sleep, combined with their worry, apprehension, stress, inconvenience, and loss of enjoyment of their property, is sufficient to constitute serious and material discomfort to persons of normal sensibilities in a normal state of health. *Badke v. USA Speedway, LLC*, 49,060 (La. App. 2 Cir. 5/14/14), 139 So. 3d 1117, *writ denied*, 14-1533 (La. 10/24/14), 151 So. 3d 606.

Here, this Court must defer to the trial court's factual determinations unless clearly wrong. Although the Colvins argued that the Joneses suffered only minor inconveniences without physical, medical, or financial harm, Louisiana jurisprudence recognizes that serious and material discomfort, such as repeated sleep disruption, stress, worry, and loss of enjoyment of property, can constitute real damage. Based on the evidence, the trial court concluded that the Colvins' construction activities created a nuisance intended to harass and intimidate them, causing discomfort, loss of enjoyment, and sleep disturbance, thereby justifying the $7,500 damages award. We see no abuse of discretion in the trial court's award of damages. Likewise, based on this record, we see no error in the trial court's failure to award monetary damages to the Colvins.

## CONCLUSION

For the reasons set forth above, the judgment of the trial court is hereby AFFIRMED and all costs are to be paid by the Appellants, the Colvins.

**AFFIRMED.**